UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| CAM YUEN, et al. | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:22-cv-00392-JDL |
| | ) | |
| IDEXX LABORATORIES, INC. and | ) | |
| IDEXX DISTRIBUTION, INC. | ) | |
| | ) | |
| Defendants | ) | |

**DEFENDANTS' SECOND RENEWED MOTION TO DISMISS THE STATE-LAW
CLAIMS (COUNTS 3-43) WITH INCORPORATED MEMORANDUM OF LAW**

## TABLE OF CONTENTS

**Page**

I.      Introduction ..................................................................................................................1

II.     Argument ......................................................................................................................2

     A.      Plaintiffs' State-Law Claims Should Be Dismissed Because *AGC* or an
           Antitrust Standing Requirement Similar to *AGC* Applies in Every State ..............2

           1.      Counts 7, 15, and 34: In Iowa and Nebraska, State Supreme Court
                 Precedent Holds That the *AGC* Test Applies .................................................2

           2.      Counts 4, 18, 29, and 37: For California and New Mexico, the
                 Court Should Follow State Intermediate Appellate Court Decisions
                 Holding That the *AGC* Test Applies .............................................................3

           3.      Count 12: Minnesota Does Not Strictly Follow *AGC*, but Follows
                 Similar Antitrust Standing Principles That Plaintiffs Also Do Not
                 Satisfy ............................................................................................................5

           4.      For All Remaining Claims, the Court Should Hold That the *AGC*
                 Test or a Test Like the Minnesota Proximate Cause Test Applies
                 Because No State-Law Authority Provides Otherwise ................................8

     B.      Some of Plaintiffs' State-Law Claims Fail for Independent Reasons,
           Regardless of Whether *AGC* Applies ...................................................................22

           1.      Illinois, Montana, and South Carolina (Counts 6, 33 and 40): Class
                 Actions for Damages Are Prohibited ...........................................................22

           2.      Nevada Deceptive Trade Practices Act (Count 35): Private
                 Enforcement Is Limited to the Elderly and People with Disabilities.........23

           3.      District of Columbia Consumer Protection Procedures Act,
                 Missouri, Rhode Island, Utah Consumer Sales Practices Act, and
                 Vermont (Counts 14, 30, 39, 41, and 43): No Allegation of
                 Misleading Conduct, or That Plaintiffs Are Consumers or
                 Purchasers ....................................................................................................23

III.    Conclusion ..................................................................................................................24

# TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

*Ashley Furniture Industries, Inc. v. Packaging Corp. of America*,
   275 F. Supp. 3d 957 (W.D. Wis. 2017) ....................................................................21

*Associated General Contractors of California, Inc. v. California State Council of*
   *Carpenters*, 459 U.S. 519 (1983) .......................................................................1, 5

*In re Cattle & Beef Antitrust Litigation*,
   --- F. Supp. 3d ----, 2023 WL 5310905 (D. Minn. Aug. 17, 2023) ...........................7

*In re Dairy Farmers of America, Inc. Cheese Antitrust Litigation*,
   2015 WL 3988488 (N.D. Ill. June 29, 2015) .................................................. passim

*Davric Maine Corp. v. Rancourt*,
   216 F.3d 143 (1st Cir. 2000) ......................................................................13

*In re Dealer Management Systems Antitrust Litigation*,
   362 F. Supp. 3d 510 (N.D. Ill. 2019) ................................................10, 13, 19, 21

*In re Digital Music Antitrust Litigation*,
   812 F. Supp. 2d 390 (S.D.N.Y. 2011) ......................................................23

*In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*,
   516 F. Supp. 2d 1072 (N.D. Cal. 2007) ....................................................14

*Formula One Licensing, B.V. v. Purple Interactive Ltd.*,
   2001 WL 34792530 (N.D. Cal. Feb. 6, 2001) .............................................4

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*,
   368 F. Supp. 3d 814 (E.D. Pa. 2019) .......................................................23

*Godin v. Schencks*,
   629 F.3d 79 (1st Cir. 2010) .....................................................................23

*havePOWER, LLC v. General Electric Co.*,
   183 F. Supp. 2d 779 (D. Md. 2002) .........................................................13

*Jane Doe No. 1 v. Backpage.com, LLC*,
   817 F.3d 12 (1st Cir. 2016) .....................................................................14

*Mint Solar, LLC v. Savage*,
   2018 WL 5924410 (D. Utah Nov. 13, 2018) .............................................24

*Oliver v. American Express Co.*,
  2021 WL 386749 (E.D.N.Y. Feb. 1, 2021)......................................................12, 13

*RSA Media, Inc. v. AK Media Group*,
  260 F.3d 10 (1st Cir. 2001) ..................................................................................14

*Salemme v. Ristaino*,
  587 F.2d 81 (1st Cir. 1978).....................................................................................3

*Schwab Short-Term Bond Market Fund v. Lloyds Banking Group PLC*,
  22 F.4th 103 (2d Cir. 2021) .....................................................................................3

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*,
  559 U.S. 393 (2010).........................................................................................22, 23

*Shaw v. Marriott International, Inc.*,
  605 F.3d 1039 (D.C. Cir. 2010)............................................................................23

*Torres-Ronda v. Nationwide Mutual Insurance Co.*,
  18 F.4th 80 (1st Cir. 2021)......................................................................................4

*Tri-State Rubbish, Inc. v. Waste Management, Inc.*,
  998 F.2d 1073 (1st Cir. 1993)...............................................................................13

*In re Wellbutrin XL Antitrust Litigation*,
  260 F.R.D. 143 (E.D. Pa. 2009).............................................................................23

*West v. AT&T Co.*,
  311 U.S. 223 (1940).................................................................................................4

### STATE CASES

*American Lead Pencil Co. v. Musgrave Pencil Co.*,
  91 S.W.2d 573 (Tenn. 1936) ................................................................................20

*Anheuser-Busch, Inc. v. Abrams*,
  520 N.E.2d 535 (N.Y. 1988).................................................................................17

*Beckler v. Visa U.S.A., Inc.*,
  2004 WL 2475100 (N.D. Dist. Ct. Sept. 21, 2004) .............................................18

*Byre v. City of Chamberlain*,
  362 N.W.2d 69 (S.D. 1985) ..................................................................................19

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
  973 P.2d 527 (Cal. 1999)..................................................................................4, 11

*County of Cook v. Philip Morris, Inc.*,
  817 N.E.2d 1039 (Ill. App. Ct. 2004) ...................................................................12

*Crouch v. Crompton Corp.*,
    2004 WL 2414027 (N.C. Super. Ct. Oct. 28, 2004) ............................................................. 17

*Duke v. Browning-Ferris Industries of Tennessee, Inc.*,
    2006 WL 1491547 (Tenn. Ct. App. May 31, 2006) ........................................................... 20

*Duvall v. Silvers, Asher, Sher & McLaren, M.D.s Neurology, P.C.*,
    998 S.W.2d 821 (Mo. Ct. App. 1999) ................................................................................ 15

*Elkins v. Microsoft Corp.*,
    817 A.2d 9 (Vt. 2002) ......................................................................................................... 24

*Fucile v. Visa U.S.A., Inc.*,
    2004 WL 3030037 (Vt. Super. Ct. Dec. 27, 2004) ............................................................ 21

*Furr v. Fonville Morisey Realty, Inc.*,
    503 S.E.2d 401 (N.C. Ct. App. 1998) ................................................................................ 18

*George v. George F. Berkander, Inc.*,
    169 A.2d 370 (R.I. 1961) .................................................................................................... 24

*Ghem, Inc. v. Mapco Petroleum, Inc.*,
    850 S.W.2d 447 (Tenn. 1993) ............................................................................................ 20

*Gibbons v. J. Nuckolls, Inc.*,
    216 S.W.3d 667 (Mo. 2007) ............................................................................................... 15

*Grayson v. AT&T Co.*,
    15 A.3d 219 (D.C. 2011) ..................................................................................................... 11

*Harrah's Vicksburg Corp. v. Pennebaker*,
    812 So. 2d 163 (Miss. 2001) ............................................................................................... 14

*Hicks v. Eller*,
    280 P.3d 304 (N.M. Ct. App. 2012) ..................................................................................... 5

*Ho v. Visa U.S.A. Inc.*,
    787 N.Y.S.2d 677 (Sup. Ct. 2004), *aff'd*, 793 N.Y.S.2d 8 (App. Div. 2005) ................... 17

*Kanne v. Visa U.S.A. Inc.*,
    723 N.W.2d 293 (Neb. 2006) .......................................................................................... 2, 3

*Knowles v. Visa U.S.A., Inc.*,
    2004 WL 2475284 (Me. Super. Ct. Oct. 20, 2004) ............................................................ 13

*Lorix v. Crompton Corp.*,
    736 N.W.2d 619 (Minn. 2007) ..................................................................................... 5, 7, 9

*Mack v. Bristol-Myers Squibb Co.*,
   673 So. 2d 100 (Fla. Dist. Ct. App. 1996) ............................................................11

*Madison Cablevision, Inc. v. City of Morganton*,
   386 S.E.2d 200 (N.C. 1989)...................................................................................17

*Nass-Romero v. Visa U.S.A. Inc.*,
   279 P.3d 772 (N.M. Ct. App. 2012) .........................................................................3

*Nevada Recycling & Salvage, Ltd. v. Reno Disposal Co.*,
   423 P.3d 605 (Nev. 2018) ......................................................................................16

*Peterson v. Visa U.S.A., Inc.*,
   2005 WL 1403761 (D.C. Super. Apr. 22, 2005)......................................................10

*Rose v. Vulcan Materials Co.*,
   194 S.E.2d 521 (N.C. 1973) ...................................................................................17

*Smith v. Video Lottery Consultants, Inc.*,
   858 P.2d 11 (Mont. 1993) ......................................................................................15

*Soper v. Tire Kingdom, Inc.*,
   124 So. 3d 804 (Fla. 2013).....................................................................................11

*Southard v. Visa U.S.A. Inc.*,
   734 N.W.2d 192 (Iowa 2007) ...................................................................................2

*Sperry v. Crompton Corp.*,
   863 N.E.2d 1012 (N.Y. 2007).................................................................................17

*Stark v. Visa U.S.A. Inc.*,
   2004 WL 1879003 (Mich. Cir. Ct. July 23, 2004)...................................................14

*Strang v. Visa U.S.A., Inc.*,
   2005 WL 1403769 (Wis. Cir. Ct. Feb. 8, 2005) .....................................................21

*Teague v. Bayer AG*,
   671 S.E.2d 550 (N.C. Ct. App. 2009) .....................................................................18

*Vinci v. Waste Management, Inc.*,
   43 Cal. Rptr. 2d 337 (Ct. App. 1995) .......................................................................3

*Waldorf Shopping Mall, Inc., v. Great Atlantic & Pacific Tea Co.*,
   1984 WL 15690 (Md. Cir. Ct. Feb. 16, 1984) ........................................................13

*Wedgewood Investment Corp. v. International Harvester Co.*,
   613 P.2d 620 (Ariz. Ct. App. 1979)........................................................................10

*Wrobel v. Avery Dennison Corp.*,
   2006 WL 7130617 (Kan. Dist. Ct. Feb. 1, 2006)....................................................12

**FEDERAL STATUTES**

15 U.S.C. § 15(a) ..............................................................................................10, 12

**STATE STATUTES**

Ariz. Rev. Stat. Ann. § 44-1412 ...............................................................................10

D.C. Code § 28-3905(k)(1)(A) ...............................................................................23

D.C. Code § 28-4508(a) ...........................................................................................10

D.C. Code § 28-4515 ...............................................................................................10

Ill. Comp. Stat. 10/7(2) ....................................................................................12, 22

Ill. Comp. Stat. 10/11 .......................................................................................8, 12

Kan. Stat. Ann. § 50-163(b) .....................................................................................12

Md. Code Ann., Com. Law § 11-202(a)(2) .............................................................13

Mich. Comp. Laws § 445.784(2) .............................................................................14

Mo. Rev. Stat. § 407.025.1(1) .................................................................................24

Mont. Code Ann. § 30-14-133(1)(a) ........................................................................22

N.H. Rev. Stat. Ann. § 356:14 .................................................................................16

Nev. Rev. Stat. Ann. § 598A.050 .............................................................................16

Nev. Rev. Stat. § 41.600 ..........................................................................................23

Nev. Rev. Stat. § 598.0977 ......................................................................................23

Or. Rev. Stat. § 646.715(2) ......................................................................................18

R.I. Gen. Laws § 6-13.1-1(6)(xiii) ...........................................................................24

R.I. Gen. Laws § 6-36-2(b) ......................................................................................19

S.D. Codified Laws § 37-1-22 ..................................................................................19

S.C. Code Ann. § 39-5-140(a) ..................................................................................22

Utah Code Ann. § 13-11-4(1) ...................................................................................24

Utah Code Ann. § 13-11-19(1) .................................................................................24

Utah Code Ann. § 76-10-3118 .................................................................................20

Vt. Stat. Ann. tit. 9, § 2453a(c) ...............................................................................21

W. Va. Code Ann. § 47-18-16 ..................................................................................21

## I.    Introduction

On January 8, 2024, the Court issued its order ("Order") holding that Plaintiffs lack antitrust standing under the multifactor test in *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*"), dismissing Plaintiffs' federal antitrust claims, and inviting this renewed motion to dismiss focused on Plaintiffs' state-law antitrust and consumer protection claims—counts 3-43 of the Complaint.  As shown below, the reasoning of the Court's Order should also lead to dismissal of all of Plaintiffs' state-law claims.  All of the relevant states either (1) have explicitly adopted the *AGC* test or a close analogue in judicial decisions, or (2) should be presumed would follow the *AGC* test or a close analogue, based on the reasoning of *AGC* and the decisions that apply those tests in other states, and because there is no countervailing authority owed deference by a federal court sitting in diversity, namely, legislation or precedential state court authority.

*First*, in Iowa and Nebraska (counts 7, 15, and 34), the state supreme courts have explicitly held that the *AGC* test applies under state law.  Because state supreme court decisions are authoritative pronouncements of state law, and because this Court has already held that Plaintiffs' claims fail the *AGC* test, the counts arising under the laws of those states should be dismissed.

*Second*, in California and New Mexico (counts 4, 18, 29, and 37), state intermediate appellate courts have held that the *AGC* test applies.  This Court should follow those intermediate appellate decisions where, as here, there is no persuasive evidence that the state's highest court would disagree.

*Third*, in Minnesota (count 12), a proximate cause antitrust standing test applies, and dismissal for lack of antitrust standing is warranted because Plaintiffs did not purchase products

or services provided by IDEXX, did not purchase anything manufactured from IDEXX components, and are complaining of alleged injuries that are remote and indirect.

*Fourth*, with respect to the remaining states, this Court should hold that the relevant state supreme court would apply either the *AGC* test or the Minnesota proximate cause test or an analogous test, for the reasons stated in the relevant authorities relating to the above states—and for the reasons that the district court articulated in the careful, state-by-state analysis in *In re Dairy Farmers of America, Inc. Cheese Antitrust Litigation*, 2015 WL 3988488 (N.D. Ill. June 29, 2015).

*Finally*, while the above analysis should result in dismissal of all of Plaintiffs' remaining claims, some of those claims should alternatively be dismissed for particularized, additional reasons, as detailed in section II.B.

## II.    Argument

### A.    Plaintiffs' State-Law Claims Should Be Dismissed Because *AGC* or an Antitrust Standing Requirement Similar to *AGC* Applies in Every State

#### 1.    *Counts 7, 15, and 34: In Iowa and Nebraska, State Supreme Court Precedent Holds That the* AGC *Test Applies*

The *AGC* test applies under the laws of Iowa and Nebraska because the highest courts of those states have explicitly so held.  The Iowa Supreme Court "appl[ies] the *AGC* factors to determine whether the plaintiffs may recover under Iowa law."  *Southard v. Visa U.S.A. Inc.*, 734 N.W.2d 192, 198 (Iowa 2007).  Likewise, the Nebraska Supreme Court held that dismissal is warranted when plaintiffs "lack standing under *Associated General Contractors* to seek recovery for [defendants'] alleged violation of the Junkin Act," which is Nebraska's antitrust law.  *Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293, 299 (Neb. 2006).  The *AGC* test also applies under Nebraska's consumer protection laws because "the standing requirements for an antitrust claim

under the Consumer Protection Act should be the same as for an antitrust claim under the Junkin Act." *Id.* at 301.

This Court is bound by the Iowa Supreme Court's and the Nebraska Supreme Court's interpretations of Iowa and Nebraska statutes, respectively, because "the interpretation of a state statute is for the state court to decide and when the highest court has spoken, that interpretation is binding on federal courts." *Salemme v. Ristaino*, 587 F.2d 81, 87 (1st Cir. 1978). Accordingly, the claims arising under the laws of Iowa and Nebraska—counts 7, 15, and 34—should be dismissed.

   **2.    *Counts 4, 18, 29, and 37: For California and New Mexico, the Court Should Follow State Intermediate Appellate Court Decisions Holding That the* AGC *Test Applies***

In California and New Mexico, intermediate appellate courts have held that *AGC* test applies under those states' antitrust laws. In California, an appellate court held that because California's antitrust law (the Cartwright Act) uses "similar language" and "has objectives identical" to the federal antitrust statutes, *AGC* applies to the question of whether "the plaintiff is a proper party." *Vinci v. Waste Mgmt., Inc.*, 43 Cal. Rptr. 2d 337, 338-39 & n.1 (Ct. App. 1995). A recent federal appellate decision likewise understood *Vinci* to have "expressly described the antitrust standing required under [California] state law in terms of the *AGC* factors," and to be "the California case most directly on point." *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 120-21 (2d Cir. 2021). And in New Mexico, the appellate court held that where "[t]he *AGC* factors do not fall in [the] Plaintiff's favor," she "fails to prove she has standing to bring a claim under the [New Mexico Antitrust Act]." *Nass-Romero v. Visa U.S.A. Inc.*, 279 P.3d 772, 780 (N.M. Ct. App. 2012). Further, the court explicitly rejected the plaintiff's "argue[ment] that *AGC* should not apply to her claim at all." *Id.*

State intermediate appellate court decisions on matters of state law are entitled to deference and should be followed "in the absence of convincing evidence that the state's highest court would decide otherwise." *Torres-Ronda v. Nationwide Mut. Ins. Co.*, 18 F.4th 80, 84 (1st Cir. 2021); *see also West v. AT&T Co.*, 311 U.S. 223, 237 (1940) (state intermediate appellate court's interpretation of state law "is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise"). While the supreme courts of the relevant states have not determined the issue, there is no state court intermediate appellate authority that supports Plaintiffs' position, nor are there "other persuasive data" that California's and New Mexico's highest courts would decide otherwise. Therefore, the antitrust claims under California and New Mexico law—counts 4 and 18—should be dismissed.

The Court should reach the same conclusion for the claim under California's Unfair Competition Law (UCL)—count 29—because when a claim under California antitrust law fails, whether for lack of antitrust standing or otherwise, a UCL claim sounding in antitrust also fails. California prohibits plaintiffs from "'plead[ing] around' absolute barriers to relief" under other statutes, such as California's antitrust law, "by relabeling the nature of the action as one brought under the unfair competition statute." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 541 (Cal. 1999).  Thus, "[w]here a plaintiff fails to state an antitrust claim, and where an unfair competition claim is based upon the same allegations, such state claims are properly dismissed." *Formula One Licensing, B.V. v. Purple Interactive Ltd.*, 2001 WL 34792530, at *4 (N.D. Cal. Feb. 6, 2001); *see also Dairy Farmers*, 2015 WL 3988488, at *18 (agreeing that when "Indirect Plaintiffs failed to adequately plead their antitrust claims," their California UCL claim "must also fail").

Likewise, under New Mexico's Unfair Practices Act—count 37—the intermediate appellate court has held that only "buyers" have standing.  *Hicks v. Eller*, 280 P.3d 304, 309 (N.M. Ct. App. 2012).  Thus, a claim is too remote unless "somewhere along the purchasing chain, the claimant did purchase an item that was at some point sold by the defendant."  *Id.* Here, the Court has determined that "the Complaint does not plausibly allege facts showing that the Plaintiffs are purchasers in the allegedly threatened market."  ECF No. 103 at 11.  Count 37 therefore should be dismissed for remoteness, too.

### 3.  *Count 12: Minnesota Does Not Strictly Follow* **AGC***, but Follows Similar Antitrust Standing Principles That Plaintiffs Also Do Not Satisfy*

As this Court recognized (ECF No. 103 at 22 n.9), the *AGC* test does not apply under Minnesota's antitrust law.  *Lorix v. Crompton Corp.*, 736 N.W.2d 619, 627-28 (Minn. 2007) ("[T]he *AGC* factors do not provide the benchmark for antitrust standing in Minnesota."). Nevertheless, some of the rationales underlying the *AGC* test and individual *AGC* factors are still relevant under Minnesota law because Minnesota has recognized that "there are injuries so remotely related to antitrust violations that courts simply cannot provide relief."  *Id.* at 630-31. As the Minnesota Supreme Court explained, "[s]tanding under Minnesota antitrust law must be defined by some prudential limits informed by foreseeability, proximate cause, remoteness, and relation of the injury to the purposes of the antitrust law."  *Id.* at 631  The *AGC* test, too, is grounded in "doctrines such as foreseeability and proximate cause."  *AGC*, 459 U.S. at 532; *see also Dairy Farmers*, 2015 WL 3988488, at *11 ("[T]he *Lorix* court still acknowledged that some of the *AGC* factors overlap with Minnesota's antitrust-standing inquiry.").

*Lorix* set out antitrust standing guideposts that are instructive here.  In *Lorix*, the defendants allegedly conspired to fix prices of rubber-processing chemicals, sold those price-fixed chemicals to tire manufacturers that used the chemicals to make tires, and sold the tires to

consumers including the plaintiff.  The plaintiff had antitrust standing under Minnesota law because (1) the plaintiff "allege[d] that she is an end user of a consumer good whose price was inflated by anticompetitive conduct earlier in the chain of manufacture"; (2) the "violation complained of—price fixing—is a per se violation of the law that strikes at the heart of antitrust law's purpose"; and (3) the "injury alleged—overcharge—is exactly the sort that would be expected to flow from the violation." *Id.* at 631.

The court contrasted those alleged facts with a case brought by consumers who purchased goods from retailers that were unlawfully forced by Visa and Mastercard to accept debit-card payments as a condition for being able to accept credit-card payments and, as a result, set inflated prices for their goods to recoup the merchant fees.  *Id.*  That claim was "most likely too remote and speculative to afford standing," for two principal reasons.  *Id.* at 632.  First, the plaintiff "did not purchase, directly or indirectly, any product or service provided by or manufactured with components from Visa or Mastercard."  *Id.*  Second, the claim involved a tying arrangement, which required proof not only "that the tying product possesses monopolistic leverage in the market, but also [of] the cost or value of the tied products free from the unlawful arrangement"—in contrast to price-fixing, which "provides a sounder basis for calculation of damages."  *Id.* at 632-33.

The facts alleged here are more analogous to those at issue in the credit-card case, where antitrust standing was lacking, than those faced by the plaintiff who was held to have standing in *Lorix*.  First, as this Court has held, Plaintiffs here are not "purchasers in the allegedly threatened market."  ECF No. 103 at 11.  They did not purchase products or services provided by IDEXX, nor did they purchase anything manufactured from IDEXX components.  That was also the case with the plaintiff in the credit-card case, but contrasts with the plaintiff in *Lorix* who purchased

6

tires manufactured with the defendants' component chemicals.  Second, Plaintiffs here have not

alleged price-fixing or other *per se* unlawful conduct.  That lack of an alleged *per se* violation

was also the situation in the credit-card case, and contrasts with the situation in *Lorix*, which

concerned price-fixing—"a per se violation of the law that strikes at the heart of antitrust law's

purpose."  *Lorix*, 736 N.W.2d at 631-32.  Third, similar to the credit-card case, Plaintiffs' chain

of causation depends upon allegations not only that IDEXX had monopoly power, but also that

Plaintiffs would pay more for veterinary services in the absence of the challenged contractual

provisions.  That again contrasts with the situation in *Lorix*, which involved alleged price-

fixing—conduct that through long judicial experience is known to proximately cause injury to

downstream purchasers and to "provide[] a sound[] basis for calculation of damages."  *Id.* at

632-33.

The conclusion that plaintiffs who lack standing under *AGC* sometimes also lack standing

under Minnesota's antitrust law for similar reasons is not novel.  In *In re Cattle & Beef Antitrust

Litigation*, --- F. Supp. 3d ----, 2023 WL 5310905 (D. Minn. Aug. 17, 2023), the court held that

cattle ranchers who lacked antitrust standing under *AGC* to sue the beef packing companies to

which the ranchers "indirectly sold cows and calves" also lacked antitrust standing under

Minnesota law because they could not allege "proximate causation and directness."  *Id.* at *1, *7.

And in *Dairy Farmers*, the court found a lack of antitrust standing under both *AGC* and

Minnesota law, observing that "*Lorix* was a 'component' case, where the price-fixed product was

a component of the end-user product," whereas the allegedly price-fixed products at issue were

not components of the finished products that the plaintiffs purchased.  *Dairy Farmers*, 2015 WL

3988488, at *12.  Here, too, Plaintiffs have not plausibly alleged a direct, proximately caused

injury, nor have they plausibly alleged that IDEXX's products are components of finished goods

that Plaintiffs purchase.  Thus, the claim arising under the Minnesota law—count 12—should be dismissed.

> **4.**    ***For All Remaining Claims, the Court Should Hold That the* AGC *Test or a Test Like the Minnesota Proximate Cause Test Applies Because No State-Law Authority Provides Otherwise***

Under the remaining states' laws, the Court should apply the *AGC* test whenever there is no contrary legislation or case law from a state appellate court.  That was the approach that *Dairy Farmers* adopted based on the district judge's meticulous and detailed analysis.  *Dairy Farmers*, 2015 WL 3988488, at *4.  The reasoning of *Dairy Farmers* also applies here.

*First*, as *Dairy Farmers* explained (and as detailed in IDEXX's previous motion to dismiss), the relevant states have either legislation or judicial authority requiring "harmonization," which means that the states' laws should in general be interpreted consistently with federal law.  *See id.* at *3-4; ECF No. 86 at 16, App. A (describing and listing the states' harmonization authorities); *see, e.g.*, 740 Ill. Comp. Stat. 10/11 ("When the wording of this Act is identical or similar to that of a federal antitrust law, the courts of this State shall use the construction of the federal law by the federal courts as a guide in construing this Act.").  "The safer prediction is to assume that the state court would apply the plain language of the [harmonization] provision" and follow federal law, including the *AGC* test.  *Dairy Farmers*, 2015 WL 3988488, at *4.

*Second*, as the district judge in *Dairy Farmers* also recognized, the fact that these states' legislatures found it necessary to enact legislation under state antitrust law to "repeal" the *Illinois Brick* rule—which is itself a rule of antitrust standing—"implies that absent the repeal, the *Illinois Brick* antitrust-standing rule *would have* applied to the states' laws under their respective harmonization provisions."  *Id.*  The *Illinois Brick* repealer statutes also demonstrate that when state legislatures intend to abrogate antitrust-standing decisions of the Supreme Court with

8

respect to their state antitrust laws, they know to enact legislation doing so.  Because the relevant states' legislatures did not enact legislation to abrogate the *AGC* antitrust standing rule, that rule should be held to apply to those states' laws.

*Third*, *Dairy Farmers* recognized that the requirement of antitrust standing is "intertwined with substantive antitrust principles," with the *AGC* factors being "influenced by the same policies that gave birth to the antitrust laws in the first place." *Id.* at *5.  As a result, it would be "counterintuitive" to conclude that while the states generally read their antitrust laws "in harmony with . . . the Supreme Court's substantive antitrust opinions," the states would nevertheless chart a uniquely different course on the issue of antitrust standing. *Id.*

For these reasons, *Dairy Farmers* determined that it would "follow the plain language of the states' harmonization provisions and adopt federal antitrust-standing law"—including *AGC*—"in applying the states' antitrust laws absent contrary authority." *Id.*  This Court should do the same.

Alternatively, the Court should predict that, if a relevant state were not to adopt the *AGC* framework, it would adopt an antitrust standing test that includes an irreducible minimum of proximate cause, similar to the test in Minnesota.  As the Minnesota Supreme Court recognized, "there are injuries so remotely related to antitrust violations that courts simply cannot provide relief," and so antitrust standing "must be defined by some prudential limits informed by foreseeability, proximate cause, remoteness, and relation of the injury to the purposes of the antitrust law." *Lorix*, 736 N.W.2d at 630-31.  Plaintiffs have not plausibly alleged that irreducible minimum level of proximate cause as shown in section II.A.3 above, which discusses the Minnesota rule's application here.

With this framework in mind, IDEXX now turns to a state-by-state discussion of the remaining claims.

*Arizona (count 3):* Under Arizona's harmonization provision, "[i]t is the intent of the legislature that in construing [the antitrust statute], the courts may use as a guide interpretations given by the federal courts to comparable federal antitrust statutes." Ariz. Rev. Stat. Ann. § 44-1412. Moreover, Arizona's appellate court has recognized that "[t]he Arizona legislature clearly intended to strive for uniformity between federal and state antitrust laws." *Wedgewood Inv. Corp. v. Int'l Harvester Co.*, 613 P.2d 620, 623 (Ariz. Ct. App. 1979). In light of the harmonization statute and *Wedgewood*, the Court should hold that the *AGC* antitrust standing test is an element of Arizona law.

*District of Columbia (counts 5 and 30):* Under the DC harmonization provision, "[i]t is the intent of the Council of the District of Columbia that in construing [the antitrust statute], a court of competent jurisdiction may use as a guide interpretations given by federal courts to comparable antitrust statutes." D.C. Code § 28-4515. Further, the federal and D.C. statutes that create rights of action for private parties, 15 U.S.C. § 15(a) and D.C. Code § 28-4508(a), respectively, both use the same phrase to describe the plaintiffs who may bring suit: persons injured "by reason of" a violation. Given the harmonization provision and the linguistic consistency between the federal and DC private-cause-of-action statutes, a DC trial court in *Peterson v. Visa U.S.A., Inc.*, 2005 WL 1403761 (D.C. Super. Apr. 22, 2005), held that the *AGC* factors apply under DC law. *Id.* at *4-5; *see also*, *e.g.*, *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 510, 541-42 (N.D. Ill. 2019) (following *Peterson* and, finding no "binding District of Columbia authority to the contrary, . . . applying *AGC* to Plaintiffs' antitrust claim under District of Columbia law"). The Court should reach the same conclusion here.

The Court should reach the same conclusion under the DC consumer protection law (count 30).  The private enforcement provision of that law was modeled after the private enforcement provision of the California UCL.  *See Grayson v. AT&T Co.*, 15 A.3d 219, 239-45 (D.C. 2011) (explaining the history of the private enforcement provision of DC's consumer protection law).  California has held that a plaintiff cannot avoid a barrier to relief under state antitrust law by relabeling its claim as one brought under the UCL.  *Cel-Tech*, 973 P.2d at 541.  The same rule therefore should apply under the DC consumer protection law.[1]

*Florida (count 31):* Plaintiffs do not and cannot bring an antitrust claim under Florida law because Florida's antitrust statute "still adheres to the 'direct purchaser' rule articulated in *Illinois Brick*."  *Dairy Farmers*, 2015 WL 3988488, at *19 (citing *Mack v. Bristol-Myers Squibb Co.*, 673 So. 2d 100, 102 (Fla. Dist. Ct. App. 1996)).  Instead, Plaintiffs' only Florida-law claim is an unfair-trade-practices claim.  However, Florida's unfair-trade-practices law includes a causation requirement.  *Id.* at *18 (citing *Soper v. Tire Kingdom, Inc.*, 124 So. 3d 804, 806 (Fla. 2013)).  And, as *Dairy Farmers* held, a plaintiff may not "repackage [its] dead-on-arrival antitrust claims" as unfair practices claims and thereby "render[] moot" the "contours of Florida's antitrust laws."  *Id.* at *19.  The *Dairy Farmers* court was "persuaded that the Florida Supreme Court would either adopt the federal court's repackaging theory or read [the unfair practices law's] causation requirement narrowly so as to preclude injuries that are too remote from the alleged antitrust violation."  *Id.*  This Court should reach the same conclusion, for the same reasons.

---

[1] For the DC consumer protection claim, as well as certain other claims, dismissal is warranted regardless of whether *AGC* applies, for the additional reasons discussed below in section II.B.

*Illinois (count 6):* Illinois's antitrust harmonization statute provides that "[w]hen the wording of [the Illinois Antitrust] Act is identical or similar to that of a federal antitrust law, the courts of this State shall use the construction of the federal law by the federal courts as a guide in construing this Act."  740 Ill. Comp. Stat. 10/11.  The private enforcement provisions of the Illinois Antitrust Act and the federal antitrust laws are worded similarly, with the former permitting suit by "[a]ny person who has been injured in his business or property, or is threatened with such injury, by a violation," and the latter permitting suit by "any person who shall be injured in his business or property by reason of anything forbidden."  740 Ill. Comp. Stat. 10/7(2); 15 U.S.C. § 15(a).  Moreover, an Illinois intermediate appellate court cited *AGC* approvingly in holding that antitrust standing under Illinois law is limited by a "remoteness doctrine," which requires plaintiffs to "set forth a direct relationship between the injury asserted and the injurious conduct."  *Cnty. of Cook v. Philip Morris, Inc.*, 817 N.E.2d 1039, 1045-47 (Ill. App. Ct. 2004).  In view of the harmonization statute and *Philip Morris*, multiple federal courts, including the Seventh Circuit, have held that the *AGC* test applies under Illinois law.  *See Oliver v. Am. Exp. Co.*, 2021 WL 386749, at *2 (E.D.N.Y. Feb. 1, 2021) (collecting cases and finding no contrary authority from Illinois courts).  This Court should do the same.

*Kansas (count 8):* Under Kansas's harmonization statute, "the Kansas restraint of trade act shall be construed in harmony with ruling judicial interpretations of federal antitrust law by the United States [S]upreme [C]ourt" with exceptions not applicable here.  Kan. Stat. Ann. § 50-163(b).  Moreover, a Kansas trial court has held that the *AGC* test applies under Kansas law.  *Wrobel v. Avery Dennison Corp.*, 2006 WL 7130617, at *2-4 (Kan. Dist. Ct. Feb. 1, 2006).  There is no contrary authority from state courts in Kansas.  The Court should hold that *AGC*

applies under Kansas law, just as the *Dairy Farmers* court did.  *See Dairy Farmers*, 2015 WL 3988488, at *8-9.

*Maine (count 9):* "[T]he 'Maine antitrust statutes parallel the Sherman Act,' and thus [the First Circuit has] analyzed claims thereunder according to the doctrines developed in relation to federal law."  *Davric Me. Corp. v. Rancourt*, 216 F.3d 143, 149 (1st Cir. 2000) (quoting *Tri-State Rubbish, Inc. v. Waste Mgmt., Inc.*, 998 F.2d 1073, 1081 (1st Cir. 1993)).  A Maine trial court found it "probable that the Maine Law Court, if presented with th[e] issue, would look to the *Associated General Contractors* factors in determining standing under Maine's antitrust laws."  *Knowles v. Visa U.S.A., Inc.*, 2004 WL 2475284, at *5 (Me. Super. Ct. Oct. 20, 2004).  There is no contrary authority from the Maine courts.  The Court should therefore follow *Knowles*, as another district court (N.D. Ill.) has also done.  *See Dealer Mgmt.*, 362 F. Supp. 3d at 542-43 (following *Dairy Farmers* and holding, in light of *Tri-State Rubbish* and *Knowles*, that it is appropriate to "consider all *AGC* factors in analyzing Plaintiffs' claim under Maine law").

*Maryland (count 10):* Under Maryland's antitrust harmonization statute, the legislature intended that "courts be guided by the interpretation given by the federal courts to the various federal statutes dealing with the same or similar matters."  Md. Code Ann., Com. Law § 11-202(a)(2).  State and federal trial courts in Maryland have applied the *AGC* test under Maryland law.  *See Waldorf Shopping Mall, Inc., v. Great Atl. & Pac. Tea Co.*, 1984 WL 15690, at *13-15 (Md. Cir. Ct. Feb. 16, 1984) (citing *AGC* approvingly and dismissing antitrust complaint for lack of antitrust standing in light of the plaintiff's "remoteness"); *havePOWER, LLC v. Gen. Elec. Co.*, 183 F. Supp. 2d 779, 785 (D. Md. 2002) (under Maryland's antitrust law, "the plaintiff must meet the six factors set forth by the Supreme Court in *Associated General Contractors*"); *Oliver*, 2021 WL 386749, at *3 (holding that "Maryland courts would apply the *AGC* factors").  There is

no contrary authority from the Maryland courts.  The Court should hold that *AGC* applies under Maryland law.

   ***Massachusetts (count 32):*** Like the federal antitrust standing requirement under *AGC*, Massachusetts's consumer protection law includes requirements of "both actual and proximate causation."  *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 24 (1st Cir. 2016).  The First Circuit has held that when a federal antitrust claim fails for lack of antitrust standing under *AGC*, a Massachusetts consumer protection claim based on the same facts also fails.  *See RSA Media, Inc. v. AK Media Grp.*, 260 F.3d 10, 13-16 (1st Cir. 2001) (dismissing Massachusetts consumer protection claim when "[w]e have affirmed the district court's holding on causation [under *AGC*] with respect to the antitrust claim, and [the plaintiff] has not made any unique arguments related to its [Massachusetts] 93A claim").  Here, Plaintiffs' Massachusetts consumer protection claim is based on the same facts as the federal claims.  Under *RSA Media*, the Court should dismiss the Massachusetts claim.

   ***Michigan (count 11):*** The harmonization provision of Michigan's antitrust law provides that "the courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes."  Mich. Comp. Laws § 445.784(2).  In *Stark v. Visa U.S.A. Inc.*, 2004 WL 1879003 (Mich. Cir. Ct. July 23, 2004), the Michigan trial court accordingly held that the *AGC* test applies under Michigan law.  *Id.* at *2-4.  There is no contrary authority from Michigan courts.  This Court should reach the same conclusion as in *Stark*.

   ***Mississippi (count 13):*** As another district court has concluded, the Mississippi Supreme Court in general "look[s] to federal law in interpreting the state's antitrust statute."  *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1095 (N.D. Cal. 2007) (citing *Harrah's Vicksburg Corp. v. Pennebaker*, 812 So. 2d 163, 171 (Miss. 2001),

which held that another limitation on the reach of the federal antitrust laws—the *Noerr-Pennington* doctrine—also applies to Mississippi's state antitrust law). There is no contrary authority. This Court should accordingly hold that the *AGC* test applies under Mississippi law.

*Missouri (count 14):* A Missouri intermediate appellate court has held that the *AGC* test applies under Missouri's antitrust law. *Duvall v. Silvers, Asher, Sher & McLaren, M.D.s Neurology, P.C.*, 998 S.W.2d 821, 824-25 (Mo. Ct. App. 1999) (relying on *AGC* and holding that "the harms that [the plaintiff] described were too remote to support his claim of antitrust violations" under Missouri law). Tacitly recognizing this, Plaintiffs do not assert an antitrust claim under Missouri law, but rather assert a claim sounding in antitrust under the Missouri Merchandising Practices Act (MMPA). IDEXX is unaware of any Missouri state court to have addressed the *AGC* test's applicability under the MMPA. The principal case on which Plaintiffs rely, *Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667 (Mo. 2007), did not address *AGC* and instead held only that the statute does not require strict "[p]rivity" between the plaintiff and the defendant. *Id.* at 668. The situation here is thus analogous to the situation under Florida law: Plaintiffs' claim is an attempt to recast a failed antitrust claim as an unfair competition claim. The Court should follow the same approach with respect to Missouri as it should follow under Florida law and hold that the same antitrust-standing requirements applicable to Missouri's antitrust laws apply to claims under the MMPA.

*Montana (count 33):* Montana's unfair trade practices law is in general "modeled after § 1 of the Sherman Act." *Smith v. Video Lottery Consultants, Inc.*, 858 P.2d 11, 12-13 (Mont. 1993). There are no statutes or in-state judicial decisions to the contrary. The Court therefore should hold that *AGC* applies.

Plaintiffs also appear to assert a claim under Montana's consumer protection law as part of the same count. There is no in-state authority holding that the antitrust standing requirement of Montana's unfair trade practices law and the proximate cause requirement of Montana's consumer protection law are any different. As with the Florida and Missouri claims discussed above, the Court should hold that the same antitrust standing requirements apply to any Montana consumer protection claim.

*Nevada (counts 16 and 35):* Nevada's unfair practices statute is to be "construed in harmony with prevailing judicial interpretations of the federal antitrust statutes." Nev. Rev. Stat. Ann. § 598A.050. While the Nevada Supreme Court has not expressly adopted the *AGC* test under Nevada law, the court has approvingly cited *AGC* in dismissing a claim brought by a remotely injured plaintiff for lack of antitrust standing. *See Nev. Recycling & Salvage, Ltd. v. Reno Disposal Co.*, 423 P.3d 605, 607-08 (Nev. 2018). There is no contrary in-state authority. The Court should accordingly hold that *AGC* applies to count 16. As for Plaintiffs' claim under Nevada's deceptive practices statute (count 35), the Court should again hold that the antitrust standing requirement under state antitrust law and the proximate cause requirement under state deceptive-practices law analogously doom Plaintiffs' Nevada claims.

*New Hampshire (counts 17 and 36):* Under New Hampshire's antitrust law (count 17), "the courts may be guided by interpretations of the United States' antitrust laws." N.H. Rev. Stat. Ann. § 356:14. There is no contrary in-state authority. The Court should hold that the *AGC* test applies. The Court should reach the same conclusion under New Hampshire's consumer protection law (count 36), again because Plaintiffs' claim fails both the antitrust standing requirement and the proximate cause requirement under consumer protection law.

16

*New York (count 19):* New York's antitrust law, known as the Donnelly Act, is "construe[d] . . . in light of federal antitrust case law" except "'where State policy, differences in the statutory language or the legislative history justify'" deviating from federal law. *Sperry v. Crompton Corp.*, 863 N.E.2d 1012, 1018 (N.Y. 2007) (quoting *Anheuser-Busch, Inc. v. Abrams*, 520 N.E.2d 535, 539 (N.Y. 1988)). A New York trial court has applied the *AGC* test to dismiss a Donnelly Act claim as "far too remote to provide antitrust standing," and the appellate court affirmed the dismissal for "remoteness," albeit without expressly discussing *AGC*. *Ho v. Visa U.S.A. Inc.*, 787 N.Y.S.2d 677, at *2-3 (Sup. Ct. 2004), *aff'd*, 793 N.Y.S.2d 8 (App. Div. 2005). The court in *Dairy Farmers* found that "New York's lower- and mid-level courts have consistently endorsed the application of the *AGC* factors in assessing antitrust standing," and that there is "no reason to believe that New York's highest court would not do the same." *Dairy Farmers*, 2015 WL 3988488, at *14. The Court thus should hold that *AGC* applies under New York law.

*North Carolina (counts 20 and 38):* Under North Carolina's antitrust law (count 20), decisions involving federal antitrust law are "instructive" although "not binding." *Madison Cablevision, Inc. v. City of Morganton*, 386 S.E.2d 200, 213 (N.C. 1989) (quoting *Rose v. Vulcan Materials Co.*, 194 S.E.2d 521, 530 (N.C. 1973)). A North Carolina trial court has applied a test for antitrust standing that is similar to *AGC* and incorporates *AGC* factor 1, *AGC* factor 4, and a "modified" version of *AGC* factor 3 that "recognize the right to recover for injury created by statute for indirect purchasers" in some instances. *See Crouch v. Crompton Corp.*, 2004 WL 2414027, at *10, *18-19 (N.C. Super. Ct. Oct. 28, 2004). Because the Court concluded that *AGC* factors 1 and 4 do not support antitrust standing here, the Court should reach the same conclusion under *Crouch*'s similar test.

Litigants sometimes cite a different North Carolina court decision, *Teague v. Bayer AG*, 671 S.E.2d 550 (N.C. Ct. App. 2009), in arguing that *AGC* is inapplicable under North Carolina law. But that argument rests on a misreading of *Teague*. "*Teague* cannot be interpreted as a wholesale rejection of *AGC*." *Dairy Farmers*, 2015 WL 3988488, at *15. Instead, *Teague* is better understood as involving a "price-fixed . . . component of [an] end-user product," analogous to *Lorix*. *Id.* Thus, multiple federal courts reviewing North Carolina law have concluded that "North Carolina's highest court would apply the *AGC* factors." *Id.* (collecting cases).

As for the claim under North Carolina's unfair trade practices law (count 38), Plaintiffs must satisfy a "proximate[] cause[]" requirement. *Furr v. Fonville Morisey Realty, Inc.*, 503 S.E.2d 401, 408 (N.C. Ct. App. 1998). Under *AGC*, they cannot do so. As with other similar claims, Plaintiffs cannot "repackag[e] their failed antitrust claim as an unfair-competition claim." *Dairy Farmers*, 2015 WL 3988488, at *20.

***North Dakota (count 21):*** A trial court in North Dakota has applied the *AGC* test in dismissing claims by plaintiffs for "lack [of] standing . . . under the North Dakota Uniform State Antitrust Act." *Beckler v. Visa U.S.A., Inc.*, 2004 WL 2475100, at *4 (N.D. Dist. Ct. Sept. 21, 2004). There is no contrary in-state authority. The Court therefore should hold that the *AGC* test applies under North Dakota law.

***Oregon (count 22):*** Oregon's harmonization provision directs that "[t]he decisions of federal courts in construction of federal law relating to the same subject shall be persuasive authority in the construction of" Oregon's antitrust law. Or. Rev. Stat. § 646.715(2). There is no contrary in-state authority. The Court should hold that the *AGC* test applies.

**Rhode Island (counts 23 and 39):** Rhode Island's antitrust laws are to be "construed in harmony with judicial interpretations of comparable federal antitrust statutes insofar as practicable, except where provisions of this chapter are expressly contrary to applicable federal provisions as construed." R.I. Gen. Laws § 6-36-2(b). Nothing under Rhode Island law is expressly contrary. The Court thus should hold that *AGC* applies to count 23. And once again, the Court should hold that the antitrust standing requirement under state antitrust law and the proximate cause requirement under state deceptive practices law similarly doom Plaintiffs' Rhode Island deceptive practices claim (count 39).

**South Carolina (count 40):** Plaintiffs assert a South Carolina unfair-practices claim but not a South Carolina antitrust claim. IDEXX is unaware of any in-state authority holding *AGC* inapplicable under South Carolina law. Thus, the Court should hold that the *AGC* test applies.

**South Dakota (count 24):** Under South Dakota's harmonization provision, "[i]t is the intent of the Legislature that in construing [the state's antitrust laws], the courts may use as a guide interpretations given by the federal or state courts to comparable antitrust statutes." S.D. Codified Laws § 37-1-22. The South Dakota Supreme Court has similarly held that "because of the similarity of language between the federal and state antitrust statutes and because of the legislative suggestion for interpretation found in [section] 37-1-22, great weight should be given to the federal cases interpreting the federal statute." *Byre v. City of Chamberlain*, 362 N.W.2d 69, 74 (S.D. 1985). There is no contrary in-state authority. The Court should hold that the *AGC* test applies, just as another court did when following the *Dairy Farmers* approach. *See Dealer Mgmt.*, 362 F. Supp. 3d at 544 ("In light of South Dakota's harmonization statute and absent any state-law authority to the contrary, the Court concludes that South Dakota would apply *AGC* to claims under South Dakota law.")

19

**Tennessee (count 25):** Tennessee courts have been relying on federal precedent when interpreting the Tennessee antitrust laws for decades. *See, e.g.*, *Duke v. Browning-Ferris Indus. of Tenn., Inc.*, 2006 WL 1491547, at *4-5 (Tenn. Ct. App. May 31, 2006) (relying on U.S. Supreme Court precedent in interpreting market power requirement under Tennessee law); *Ghem, Inc. v. Mapco Petrol., Inc.*, 850 S.W.2d 447, 452-57 (Tenn. 1993) (relying on U.S. Supreme Court precedent in interpreting "antitrust injury" requirement of Tennessee law); *Am. Lead Pencil Co. v. Musgrave Pencil Co.*, 91 S.W.2d 573, 576 (Tenn. 1936) (holding that "two decisions of the Supreme Court of the United States" were "decisive" under Tennessee law). There is no in-state authority holding *AGC* inapplicable. The Court therefore should hold that *AGC* applies under Tennessee law.

**Utah (counts 26, 41, and 42):** Under Utah's antitrust harmonization statute, courts are to be "guided by interpretations given by the federal courts to comparable federal antitrust statutes and by other state courts to comparable state antitrust statutes." Utah Code Ann. § 76-10-3118. The Court should hold that *AGC* applies under Utah's antitrust law (count 26) because there is no contrary in-state authority. And the court should reach the same conclusion under Utah's consumer sales practices statute (count 41), again because Plaintiffs' allegations fail both the antitrust standing requirement under antitrust law and the proximate cause requirement under consumer protection law. *See Dairy Farmers*, 2015 WL 3988488, at *19 (holding under Florida law that a plaintiff may not "repackage [its] dead-on-arrival antitrust claims" as unfair practices claims and thereby "render[] moot" the "contours of [the] antitrust laws").

As for count 42, Plaintiffs have conceded that the Utah Unfair Practices Act (count 42) "provides a cause of action only to competitors," and they therefore "consent to dismissal." ECF No. 87 at 23.

*Vermont (count 43):* Interpretation of Vermont's consumer fraud act "shall be guided by the construction of federal antitrust law and the Sherman Act, as amended, as interpreted by the courts of the United States." Vt. Stat. Ann. tit. 9, § 2453a(c). A Vermont trial court has predicted that "the Vermont Supreme Court would . . . draw upon the standing factors in *Associated General Contractors* for guidance" in deciding issues of antitrust standing under Vermont's consumer fraud act. *Fucile v. Visa U.S.A., Inc.*, 2004 WL 3030037, at *3 (Vt. Super. Ct. Dec. 27, 2004). There is no contrary in-state authority. The Court should hold that *AGC* applies under Vermont law. *See Dealer Mgmt.*, 362 F. Supp. 2d at 544 (following the Dairy Farmers approach and holding that "*AGC* applies to claims brought under Vermont law in light of Vermont's harmonization statute").

*West Virginia (count 27):* Under West Virginia's harmonization statute, the West Virginia antitrust laws are to be construed "in harmony with ruling judicial interpretations of comparable federal antitrust statutes." W. Va. Code Ann. § 47-18-16. There is no contrary in-state authority. The Court should hold that the *AGC* test applies under West Virginia law.

*Wisconsin (count 28):* "Wisconsin courts traditionally look to federal law to interpret substantive violations of the Wisconsin antitrust statutes." *Ashley Furniture Indus., Inc. v. Packaging Corp. of Am.*, 275 F. Supp. 3d 957, 968-69 (W.D. Wis. 2017). A Wisconsin trial court predicted that Wisconsin "appellate courts would look to [*AGC*'s] factors for guidance in assessing an indirect or remote purchaser's standing." *Strang v. Visa U.S.A., Inc.*, 2005 WL 1403769, at *3 (Wis. Cir. Ct. Feb. 8, 2005). There is no contrary in-state authority. The Court should hold that *AGC* applies under Wisconsin law. *See Dealer Mgmt.*, 362 F. Supp. 3d at 545 (following the *Dairy Farmers* approach and holding that "the fact that courts have long applied

federal law to Wisconsin antitrust claims convinces the Court that the Wisconsin Supreme Court likely would apply *AGC* to antitrust claims brought under Wisconsin law").

### B.   Some of Plaintiffs' State-Law Claims Fail for Independent Reasons, Regardless of Whether *AGC* Applies

#### 1.   *Illinois, Montana, and South Carolina (Counts 6, 33 and 40): Class Actions for Damages Are Prohibited*

Three states prohibit class actions under their antitrust or consumer protection laws, and these prohibitions require dismissal of three of Plaintiffs' claims.  In Illinois, "no person shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under [the Illinois Antitrust] Act, with the sole exception of this State's Attorney General."  740 Ill. Comp. Stat. 10/7(2).  In Montana, consumers "may bring an individual action but not a class action" under the Montana Consumer Protection Act.  Mont. Code Ann. § 30-14-133(1)(a).  Likewise in South Carolina, private plaintiffs "may bring an action individually, but not in a representative capacity" under the Unfair Trade Practices Act.  S.C. Code Ann. § 39-5-140(a).

Plaintiffs are wrong that these prohibitions on class-action are procedural for *Erie* purposes and therefore inapplicable in federal court.  *See* ECF No. 87 at 24 & n.24.  Plaintiffs' argument rests on a misinterpretation of the Supreme Court's decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010).  *Shady Grove* concerned a New York procedural statute that barred class actions in all civil suits seeking penalties or statutory minimum damages.  *Id.* at 396.  That statute, applying generally to all cases under New York law, was held to be procedural for *Erie* purposes and therefore inapplicable in federal court to the extent it conflicted with Federal Rule of Civil Procedure 23.  But the class-action bars at issue here are not generally applicable under state law.  They apply only to the specific state-law antitrust and consumer protection statutes of which they are a part.  As a result,

they are "'so intertwined with a state right or remedy that [they] function[] to define the scope of the state-created right,'" and therefore apply in federal court.  *Godin v. Schencks*, 629 F.3d 79, 89 (1st Cir. 2010) (quoting *Shady Grove*, 559 U.S. at 423 (Stevens, J., concurring)).  Multiple federal courts examining these very statutes have come to the same conclusion, *see, e.g.*, *In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 833-34 (E.D. Pa. 2019); *In re Digit. Music Antitrust Litig.*, 812 F. Supp. 2d 390, 414-16 (S.D.N.Y. 2011), although some have disagreed.

### 2.    *Nevada Deceptive Trade Practices Act (Count 35): Private Enforcement Is Limited to the Elderly and People with Disabilities*

The private enforcement provision of the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 598.0977, "is limited to suits by 'an elderly person or a person with a disability.'"  *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 163 (E.D. Pa. 2009) (quoting Nev. Rev. Stat. § 598.0977).  Relying on the other side of conflicting federal court decisions, Plaintiffs' response is that Nev. Rev. Stat. § 41.600 creates a cause of action for any victim.  ECF No. 87 at 25.  But § 41.600 should not be relevant here because the Complaint alleges a "violation of the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 598.0903, et seq." (ECF No. 1 at 79), not a claim under § 41.600.

### 3.    *District of Columbia Consumer Protection Procedures Act, Missouri, Rhode Island, Utah Consumer Sales Practices Act, and Vermont (Counts 14, 30, 39, 41, and 43): No Allegation of Misleading Conduct, or That Plaintiffs Are Consumers or Purchasers*

Finally, a number of the statutes at issue apply only where there is deceptive or fraudulent conduct, or a transaction involving a plaintiff who is a consumer or purchaser.  The District of Columbia Consumer Protection Procedures Act "protects only consumers."  *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1043 (D.C. Cir. 2010); *see also* D.C. Code § 28-3905(k)(1)(A) ("consumer may bring an action").  Under the Missouri Merchandising Practices Act, the

plaintiff must be a "person who purchases or leases merchandise." Mo. Rev. Stat. § 407.025.1(1). Under Rhode Island law, "unfair competition must be predicated upon conduct on the part of the respondent that reasonably tended to confuse and mislead the general public into purchasing his product." *George v. George F. Berkander, Inc.*, 169 A.2d 370, 371 (R.I. 1961); *see also* R.I. Gen. Laws § 6-13.1-1(6)(xiii) (as relevant here, limiting "[u]nfair methods of competition and unfair or deceptive acts or practices" to "[e]ngaging in any act or practice that is unfair or deceptive to the consumer"). Under the Utah Consumer Sales Practices Act, only "deceptive act[s] or practice[s] by a supplier in connection with a consumer transaction" are proscribed, and private enforcement is limited to "consumer" plaintiffs. Utah Code Ann. §§ 13-11-4(1), 13-11-19(1); *see, e.g.*, *Mint Solar, LLC v. Savage*, 2018 WL 5924410, at *7 (D. Utah Nov. 13, 2018) (dismissing complaint because "Plaintiffs are not consumers and have not engaged in a consumer transaction with Defendants"). Under Vermont law, the plaintiff must be a "purchaser of the alleged good or service." *Elkins v. Microsoft Corp.*, 817 A.2d 9, 14 (Vt. 2002). Here, because the Complaint alleges neither misleading conduct, nor that "Plaintiffs are consumers of POC diagnostic products," nor that "Plaintiffs are purchasers in the allegedly threatened market" (ECF No. 103 at 12-14), these claims should be dismissed.

## III.    Conclusion

For the foregoing reasons, the Court should dismiss counts 3-43 under Rule 12(b)(6).

24

February 7, 2024

        /s/ *Adrianne E. Fouts*
        James T. Kilbreth
        Adrianne E. Fouts

**DRUMMOND WOODSUM**
84 Marginal Way, Suite 600
Portland, ME  04101
(207) 772-1941
jkilbreth@dwmlaw.com
afouts@dwmlaw.com

        /s/ *Adam R. Lawton*
        Glenn D. Pomerantz
        Stuart N. Senator
        Adam R. Lawton

February 7, 2024

**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue
Los Angeles, CA  90071
(213) 683-9100
Glenn.Pomerantz@mto.com
Stuart.Senator@mto.com
Adam.Lawton@mto.com

        *Attorneys for Defendants*