UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| CAM YUEN, et al., on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>   v.<br><br>IDEXX LABORATORIES, INC., et al.,<br><br>         Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No: 2:22-cv-00392-JDL |

**PLAINTIFFS' OPPOSITION TO
<u>DEFENDANTS' RENEWED MOTION TO DISMISS THE STATE LAW CLAIMS</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

I. INTRODUCTION ..................................................................................................... 1

II. BACKGROUND ........................................................................................................ 2

III. ARGUMENT .............................................................................................................. 3

    A. The Ordinary Pleading Standard Applies .......................................................... 3

    B. Plaintiffs are the Appropriate Parties to Bring Claims against IDEXX .............................. 4

    C. Federal Restrictions on Indirect Purchaser Standing Do Not Apply to States that Have Repealed the Federal Rule Against Indirect Purchaser Actions ................................ 4

    D. Repealer Jurisdictions Recognize Broad Antitrust Standing .............................. 6

    E. Under The First Approach—Adapting AGC—Plaintiffs Have Antitrust Standing ........... 8

        1. The federal AGC test does not apply to Cartwright Act claims ................................... 8

        2. California Does Not Impose a Market Participant Requirement ................................. 11

        3. Many States Adapt AGC to Permit Broad Indirect Purchaser Standing ................... 12

    F. Under the Second Approach—Rejecting AGC—Plaintiffs Have Antitrust Standing ...... 13

    G. Regardless of the Approach, Plaintiffs Have Standing Under the State Laws of the Repealer Jurisdictions .................................................... 15

    H. IDEXX's Reliance on Harmonization Statutes is Misplaced .......................................... 15

    I. Plaintiffs' State-Law Claims Are Not Otherwise Barred ................................................. 16

        1. State-Law Class Action Prohibitions Are Preempted in Federal Court ...................... 16

        2. Nevada's Consumer Protection Law Provides A Cause of Action For Any Victim .. 18

        3. Plaintiffs Have Adequately Pled Their Other Consumer Protection Claims ............. 19

IV. CONCLUSION ......................................................................................................... 22

Page(s)

Cases

*Arroyo-Melecio v. Puerto Rican American Ins. Co.*,
  398 F.3d 56 (1st Cir. 2005) ................................................................................................ 4

*Aryeh v. Canon Bus. Solutions, Inc.*,
  55 Cal.4th 1185 (2013) ............................................................................................... 9, 10

*Associated General Contractors of California, Inc. v. California State Council of Carpenters*,
  459 U.S. 519 (1983) ................................................................................................... 1, 6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................................... 3

*Blue Shield of Va. v. McCready*,
  457 U.S. 465 (1982) ......................................................................................................... 4

*Breiding v. Eversource Energy*,
  344 F. Supp. 3d 433 (D. Mass. 2018) ............................................................................. 3

*Bunker's Glass Co. v. Pilkington*,
  75 P.3d 99 (Ariz. 2003) .............................................................................................. 12, 16

*California v. ARC America Corp.*,
  490 U.S. 93 (1989) ....................................................................................................... 5, 6

*Cellular Plus, Inc. v. Superior Court*,
  14 Cal. App. 4th 1224 (Ct. App. 1993) ................................................................... 5, 8, 9

*Cianci v. Superior Court*,
  40 Cal. 3d 903 (1985) ...................................................................................................... 8

*D. R. Ward Const. Co. v. Rohm and Haas Co.*,
  470 F. Supp. 2d 485 (E.D. Pa. 2006) ......................................................................... 5, 14

*Elkins v. Microsoft Corp.*,
  174 Vt. 328 (2002) ......................................................................................................... 20

*George v. George F. Berkander, Inc.*,
  92 R.I. 426, 169 A.2d 370 (1961) ................................................................................. 21

*Haley v. City of Boston*,
  657 F.3d 39 (1st Cir. 2011) .............................................................................................. 3

*In re Aftermarket Filters Antitrust Litig.*,
  2009 WL 3754041 (N.D. Ill. Nov. 5, 2009) ............................................................. 4, 12

*In re Automotive Parts Antitrust Litigation*,
  29 F. Supp. 3d 982 (E.D. Mich. 2014) ................................................. 12

*In re Broiler Chicken Antitrust Litig.*,
  290 F. Supp. 3d 772 (N.D. Ill. 2017) ................................................. 17

*In re Capacitors Antitrust Litig.*,
  106 F. Supp. 3d 1051 (N.D. Cal. 2015) ........................................ 9, 10, 14

*In re Cathode Ray Tube [CRT] Antitrust Litig.*,
  738 F. Supp. 2d 1011 (N.D. Cal. 2010) ................................................. 11

*In re Chocolate Confectionary Antitrust Litig.*,
  602 F. Supp. 2d 538 (M.D. Pa. 2009) ................................................. 21

*In re Cipro Cases 1 & II*,
  348 P.3d 845 (2015) ................................................................. 9, 10

*In re Dairy Farmers of America, Inc. Cheese Antitrust Litig.*,
  2015 WL 3988488 (N.D. Ill. June 29, 2015) ....................................... 14, 15

*In re DDAVP Indirect Purchaser Antitrust Litig.*,
  903 F. Supp. 2d 198 (S.D.N.Y. 2012) ................................................. 19

*In re Digital Music Antitrust Litig.*,
  812 F. Supp. 2d 390 (S.D.N.Y. 2011) ................................................. 18

*In re Flash Memory Antitrust Litig.*,
  643 F. Supp. 2d 1133 (N.D. Cal. 2009) ......................................... 11, 12, 15

*In re Generic Pharms. Pricing Antitrust Litig.*,
  368 F. Supp. 3d 814 (E.D. Pa. 2019) ................................................. 18

*In re Graphics Processing Units Antitrust Litig.*,
  540 F. Supp. 2d 1085 (N.D. Cal. 2007) ........................................... 12, 16

*In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*,
  2021 WL 4306018 (N.D. Cal. Sept. 22, 2021) ......................................... 18

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
  383 F.Supp.3d 187 (S.D.N.Y. 2019) ............................................... 13, 14

*In re Lithium Ion Batteries Antitrust Litig.*,
  2014 WL 4955377 (N.D. Cal. Oct. 2, 2014) ...................................... passim

*In re Loestrin 24 Fe Antitrust Litig.*,
  410 F. Supp. 3d 352 (D.R.I. 2019) ..................................................... 4

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
  350 F. Supp. 2d 160 (D. Maine 2004) ................................................. 8, 9

iii

*In re Nexium (Esomeprazole) Antitrust Litig.*,
968 F. Supp. 2d 367 (D. Mass. 2013) ............................................................... 4

*In re Packaged Seafood Prods. Antitrust Litig.*,
242 F. Supp. 3d 1033 (S.D. Cal. 2017) .............................................. 19, 20, 21

*In re Pool Prods. Distrib. Market Antitrust Litig.*,
946 F. Supp. 2d 554 (E.D. La. 2013) ........................................................ 10, 14

*In re Pork Antitrust Litig.*,
495 F. Supp. 3d 753 (D. Minn. 2020) ............................................................. 21

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
2015 WL 5458570 (D. Mass. Sept. 16, 2015) ................................................. 4

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
586 F. Supp. 2d 1109 (N.D. Cal. 2009) .............................................. 8, 10, 11

*In re Wellbutrin XL Antitrust Litig.*,
260 F.R.D. 143 (E.D. Pa. 2009) ...................................................................... 10

*Kanne v. Visa U.S.A. Inc.*,
723 N.W. 2d 293 (Neb. 2006) ........................................................................... 7

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
232 F.3d 979 (9th Cir. 2000) ................................................................ 5, 8, 9, 12

*Lisk v. Lumber One Wood Preserving, LLC*,
792 F.3d 1331 (11th Cir. 2015) ...................................................................... 17

*Lorix v. Crompton Corp.*,
736 N.W. 2d 619 (Minn. 2007) ................................................................ passim

*Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours and Co.*,
2015 WL 4755335 (N.D. Cal. Aug. 11, 2015) ............................................... 14

*Mayor & City Council of Baltimore v. Merck Sharp & Dohme Corp.*,
2023 WL 8018980 (E.D. Pa. Nov. 20, 2023) ................................................. 17

*Moniz v. Bayer Corp.*,
484 F. Supp. 2d 228 (D. Mass. 2007) ................................................ 5, 6, 8, 14

*Picone v. Shire PLC*,
2017 WL 4873506 (D. Mass. Oct. 20, 2017) .................................................. 4

*Ryman v. Sears, Roebuck & Co.*,
505 F.3d 993 (9th Cir. 2007) ............................................................................ 9

*Samsung Electronics Co., Ltd. V. Panasonic Corp.*,
747 F.3d 1199 (9th Cir. 2014) .......................................................................... 9

*Sergeants Benevolent Association Health & Welfare Fund v. Actavis, plc*,
    2018 WL 7197233 (S.D.N.Y. Dec. 26, 2018) ........................................ 20, 21

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ....................................................... 16, 17, 18

*Shaw v. Marriott Int'l, Inc.*,
    605 F.3d 1039 (D.C. Cir. 2010) ....................................................... 19, 20

*Southard v. Visa U.S.A. Inc.*,
    734 N.W. 2d 192 (Iowa 2007) ....................................................... 7

*Teague v. Bayer AG*,
    671 S.E.2d 550 (N.C. Ct. App. 2009) ....................................................... 5, 6, 8, 14

*Vinci v. Waste Mgmt., Inc.*,
    36 Cal. App. 4th 1811 (Ct. App. 1995) ....................................................... 9, 10

*Vivint, Inc. v. England*,
    2013 WL 1842538 (D. Utah May 1, 2013) ....................................................... 19

*Wade v. Jobe*,
    818 P.2d 1006 (Utah 1991) ....................................................... 21

<u>Statutes</u>

9 V.S.A. § 2461(b) ....................................................... 20

740 Ill. Comp. Stat. 10/7(2) ....................................................... 18

740 Ill. Comp. Stat. 10/11 ....................................................... 16

Ariz. Rev. Stat. Ann. § 44-1412 ....................................................... 16

Calif. Bus. & Prof. Code § 16750(a) ....................................................... 8

D.C. Code § 38-4515 ....................................................... 16

Md. Code. Ann., Com. Law § 11-202(a)(2) ....................................................... 15, 16

Mo. Rev. Stat. § 407.010(4) ....................................................... 20

Mo. Rev. Stat. § 407.024.1(1) ....................................................... 20

N.H. Rev. Stat. Ann. § 356:14 ....................................................... 16

Nev. Rev. Stat. § 41.600(1) ....................................................... 18, 19

Or. Rev. Stat. §646.715(2) ....................................................... 16

R.I. Gen. Laws §§ 6-13.1-2, 6-13.1-1(6) ....................................................... 21

Utah Code Ann. § 13-11-5.............................................................................. 19, 21

Utah Code Ann. §§ 13-11-3(2)(a)....................................................................... 19

Utah Code § 13-11-2........................................................................................ 21

## I.     INTRODUCTION

Plaintiffs and Defendants, IDEXX Laboratories, Inc. and IDEXX Distribution, Inc. (together "IDEXX" or "Defendants"), agree on numerous issues. One of them is that states have the power to enable indirect purchasers to seek damages from antitrust violators when federal law would not allow them to do so. Another is that the states whose laws Plaintiffs invoke have exercised that power. A third is that those state laws are largely the same for purposes of IDEXX's second renewed motion to dismiss.

The main point of contention is whether the relevant state laws permit Plaintiffs to bring claims in this litigation. IDEXX claims they do not. Its position, in effect, is that this Court should hollow the state laws by construing them in the same way as federal law. Toward this end, IDEXX urges this Court to apply the federal test in *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*"), or a close analogue that produces the same result, to Plaintiffs' state law claims. But the critical question is not whether *AGC* applies to state antitrust laws. The question is whether *AGC* applies *in the same way* to indirect purchaser claims under state law as it does to direct purchaser claims under federal law, and whether such application warrants dismissal in this context.

It is true, IDEXX admits, that many states have authorized indirect purchasers to seek damages for antitrust violations. But, according to IDEXX, that was largely an empty action. It asks this Court to interpret state law as if it were federal law, making it difficult to plead—much less prove—an indirect purchaser claim, even if the evidence will show that IDEXX in fact violated the antitrust laws and in fact caused Plaintiffs to pay overcharges.

Plaintiffs take the opposite position. As explained below, state and federal courts recognize that when states authorize indirect purchaser claims for damages, the legal rights they confer are meaningful. Those states do not incorporate federal doctrines that would render those rights

meaningless in many circumstances. Instead, courts adapt the doctrines so that indirect purchasers can state a claim—and ultimately recover—if they can show that an antitrust violation caused them a relevant form of harm.

Here, Plaintiffs are the indirect purchasers most directly harmed by IDEXX's anticompetitive conduct. They are pet owners who paid artificially inflated prices to veterinarians, which in turn paid artificially inflated prices directly to IDEXX. Plaintiffs make non-conclusory allegations that plausibly establish that IDEXX violated state laws and that such violation caused Plaintiffs and the Class they seek to represent to pay overcharges. As a result, Plaintiffs have standing to bring claims in the relevant repealer jurisdictions. This Court should deny IDEXX's renewed motion to dismiss and give Plaintiffs the opportunity to prove their claims through discovery.

## II.     BACKGROUND

Plaintiffs allege that IDEXX has acquired and maintained monopoly power in the market for POC Diagnostic Products[1] using long-term, exclusionary contracts that suppress competition. ECF No. 1 at ¶¶ 3-4, 64, 68-74.  In the past, IDEXX sold its POC Diagnostic Products to distributors, which in turn sold the products to veterinarians, which in turn sold the products to pet owners. *Id.* at ¶¶ 4-5.  But in 2012, the FTC sought to end IDEXX's illegal scheme, ordering IDEXX to discontinue the use of exclusionary contracts with distributors. *Id.* at ¶¶ 4, 96-100. Rather than comply with the spirit of the FTC order, IDEXX changed its focus to impose the exclusionary agreements directly on the veterinary practices themselves. *Id.* at ¶¶5-7, 99-100. These agreements also rob veterinarians of any meaningful ability to litigate antitrust claims, imposing a loser-pays provision, *id.* at ¶ 9, requiring veterinarians to bring any lawsuit on an individual basis, and

---

[1] POC Diagnostic Products include (1) "Analyzers" (large instruments for running blood chemistry tests); (2) "Consumables" (single-use items, including slides and reagents, that are loaded into analyzers during testing); and (3) "Rapid Test Kits" (single-use tests that may be used without an analyzer).  ECF No. 1 at ¶ 2.

preventing veterinarians from recovering treble damages or trying their cases to a jury.[2]

Plaintiffs are the indirect purchasers most directly harmed by IDEXX's conduct. They are pet owners who pay artificially inflated prices directly to veterinarians, which in turn pay artificially inflated prices directly to IDEXX. *Id.* at ¶¶ 6, 17-18, 24-45, 148-50. All or most of the overcharges paid by veterinarians were passed on to Plaintiffs and the class members they seek to represent. *Id.* at ¶ 149.

## III.     ARGUMENT

### A.     The Ordinary Pleading Standard Applies

The ordinary pleading standard under Rule 8(a)(2) applies here. ECF No. 103 at 5 ("There is no special pleading requirement for motions to dismiss in the context of an antitrust action.") (quoting *Breiding v. Eversource Energy*, 344 F. Supp. 3d 433, 438 (D. Mass. 2018)); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court should take all non-conclusory allegations as true and limit its inquiry to the face of the Complaint. ECF No. 103 at 5; *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011).

Plaintiffs have stated a claim under the laws of all relevant states. Plaintiffs have plausibly alleged that IDEXX violated the relevant state laws, using exclusionary contracts to maintain monopoly power in a scheme functionally equivalent to the one the FTC ordered IDEXX to cease. ECF No. 1 at ¶¶ 4, 96-98. Plaintiffs also have plausibly alleged that IDEXX's violation caused them to pay overcharges to veterinarians, suffering actionable injuries. *Id.* at ¶¶ 6, 24-45, 148-50. Rather than contest the antitrust violation itself, IDEXX argues that Plaintiffs have not satisfied a technical requirement that derives from federal law, which is incompatible with state laws that authorize indirect purchaser claims.

---

[2] Plaintiffs have not alleged all these contractual terms, but Plaintiffs believe they are undisputed and could amend the Complaint to allege them if the Court deems it necessary to do so.

### B. Plaintiffs are the Appropriate Parties to Bring Claims against IDEXX

Plaintiffs are pet owners who paid inflated prices to the veterinarians directly harmed by IDEXX's anticompetitive pricing. ECF No. 1 at ¶¶ 6, 24-45, 148-50. Whether Plaintiffs paid supracompetitive prices for the POC Diagnostic Products themselves or for veterinary services using those products is immaterial. In either scenario, Plaintiffs paid overcharges as a direct result of IDEXX's supracompetitive pricing on POC Diagnostic Products. Moreover, overcharges on a service to consumers are the kind of injury the antitrust laws were designed to prevent. *See, e.g., In re Aftermarket Filters Antitrust Litig.*, 2009 WL 3754041, at *8 (N.D. Ill. Nov. 5, 2009) (consumers who purchased car maintenance services that included filter installation had standing to bring claims against the filter manufacturers for overcharges).[3]

That the veterinarians themselves have also been harmed by IDEXX's conduct is also immaterial. Courts routinely allow direct purchasers to pursue damages under federal law and indirect purchasers to pursue claims under state laws based on the same anticompetitive conduct.[4] Moreover, the veterinary practices are unlikely to pursue claims against IDEXX due to the contractual provisions discouraging antitrust claims in the agreements at issue.

### C. Federal Restrictions on Indirect Purchaser Standing Do Not Apply to States that Have Repealed the Federal Rule Against Indirect Purchaser Actions

The Supreme Court has confirmed state authority to establish more expansive antitrust

---

[3] *Blue Shield of Va. v. McCready*, 457 U.S. 465, 481, 485 (1982) (purchasers of a service— psychotherapy treatment—had antitrust standing to bring claims for an unlawful conspiracy between a health plan and an association of psychiatrists); *Arroyo-Melecio v. Puerto Rican American Ins. Co.*, 398 F.3d 56, 72-73 (1st Cir. 2005) (consumers of insurance services adequately alleged they suffered antitrust injury and had antitrust standing).

[4] *See, e.g., In re Loestrin 24 Fe Antitrust Litig.*, 410 F. Supp. 3d 352, 367, 375-77 (D.R.I. 2019) (denying defendants' renewed motion to dismiss several end purchasers' claims under various state laws, after deferring to rule on state-specific issues until class certification); *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 408 (D. Mass. 2013) (denying Defendants' motion to dismiss various end-payor claims); *Picone v. Shire PLC*, 2017 WL 4873506, at *20 (D. Mass. Oct. 20, 2017) (same); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2015 WL 5458570 (D. Mass. Sept. 16, 2015) (same).

standing than under federal law, recognizing that the federal policy condemning multiple liability under *Illinois Brick* does not bar indirect purchaser claims for damages under state law. *California v. ARC America Corp.*, 490 U.S. 93, 103 (1989).[5] As this Court already held, several repealer jurisdictions have passed laws repudiating *Illinois Brick*'s bar on indirect purchaser recovery, inviting indirect purchaser suits, and expanding the scope of plaintiffs with standing to bring antitrust claims for damages.  ECF No. 103 at 21.  Logically, therefore, the antitrust standing requirements under the state laws in repealer jurisdictions are necessarily more forgiving than under federal law. *See, e.g.*, *Cellular Plus, Inc. v. Superior Court*, 14 Cal. App. 4th 1224, 1234 (Ct. App. 1993) (the scope of "antitrust injury" under California law is broader than under federal law); *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 987 (9th Cir. 2000) ("California law affords [antitrust] standing more liberally than does federal law"); *Lorix v. Crompton Corp.*, 736 N.W. 2d 619, 629 (Minn. 2007) (Minnesota law affords antitrust standing more liberally than does federal law).[6]

In the face of precedent permitting indirect purchaser cases under state law that are prohibited under federal law, IDEXX nonetheless contends the analysis for antitrust standing is essentially the same under federal and state law, arguing that all relevant states either rigidly adopt the federal test from *AGC* or follow a "close analogue" to arrive at an equivalent result. ECF 106 at

---

[5] The expansion of indirect purchaser standing to state law claims is a "policy decision committed to the states, not federal judges." *In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377, at *7 (N.D. Cal. Oct. 2, 2014).

[6] *Teague v. Bayer AG*, 671 S.E.2d 550, 556-58 (N.C. Ct. App. 2009) (recognizing that antitrust standing under North Carolina law is broader than under federal law and holding that the *AGC* factors do not apply to indirect purchaser claims under North Carolina's antitrust statute); *D.R. Ward. Const. Co. v. Rohm and Haas Co.*, 470 F. Supp. 2d 485, 494-502 (E.D. Pa. 2006) (recognizing that antitrust standing under state law is broader than under federal law, and refusing to apply the *AGC* test to claims under Arizona, Tennessee, and Vermont statutes); *Moniz v. Bayer Corp.*, 484 F. Supp. 2d 228, 231 (D. Mass. 2007) (recognizing antitrust standing under state law is broader than under federal law, and finding that because *AGC* formulated a test for standing "with respect to federal antitrust laws" it is "inapposite" to plaintiffs' state law claims).

1. But *AGC* was based on the reservations about indirect purchaser claims set forth in *Illinois Brick*,[7] including about the "indirectness of the alleged injury," the potential for "duplicative recoveries," and "complicated theories" of pass-through. *See AGC*, 459 U.S. at 543-45. It is thus unsurprising that the *AGC* factors, as developed and applied under federal law, are an extension of the federal ban on indirect purchaser damages claims and are at odds with state laws that allow those claims.[8]

It is similarly unsurprising that state and federal courts have recognized that federal antitrust standing doctrine should be modified to render it consistent with the policies underlying repealer statutes. The state legislatures that repudiated *Illinois Brick* and invited indirect purchaser damages suits did not intend for courts to dismiss those suits based on the very concerns that motivated *Illinois Brick*. *Lorix*, 736 N.W. 2d at 629. Despite this, IDEXX asks this Court to disregard the Supreme Court's directive in *ARC America* and to apply the federal version of *AGC* doctrine.

## D. Repealer Jurisdictions Recognize Broad Antitrust Standing

The Parties here agree that antitrust standing principles are applied consistently across state lines. IDEXX has addressed antitrust standing under the relevant state laws twice. First, in its Motion to Dismiss, IDEXX argued that the same analysis applies to antitrust standing under federal and state law, causing the analysis under state antitrust laws to be uniform: "Just as Plaintiffs' federal claims fail for lack of antitrust standing under the *AGC* test, Plaintiffs' claims under the antitrust laws of 26 states [] fail under that same test." ECF No. 86 at 16, Appx. A. Second, at the Court's invitation to address state law more specifically, IDEXX maintained its view that state law is consistent, asserting

---

[7] *Lorix*, 736 N.W. 2d at 629.

[8] *ARC America*, 490 U.S. at 105 (stating that *AGC* construed federal law and did not impose a federal standard on state causes of action); *Teague*, 671 S.E. 2d at 557 ("[W]e hold the *AGC* factors do not apply in determining which indirect purchasers have standing to sue under the North Carolina antitrust statutes."); *Moniz*, 484 F. Supp. 2d at 231 (finding *AGC* inapposite to analysis of state law standing for indirect purchasers); *D.R. Ward.*, 470 F. Supp. 2d at 496 (E.D. Pa. 2006) ("[T]he Court finds that it need not use the *AGC* factors as the framework for analyzing whether federal prudential considerations permit standing under the Vermont, Tennessee, and Arizona antitrust statutes [].").

that all relevant states either rigidly adopt the federal test under *AGC* or follow a "close analogue" with the same result. ECF No. 106 at 1.

Plaintiffs agree that state law, in relevant part, is consistent. To apply antitrust standing principles to state law claims, courts generally take one of two approaches. Some adapt the *AGC* factors to indirect purchaser claims. Others reject *AGC* entirely. Either way, in repealer jurisdictions, courts allow claims in indirect purchaser lawsuits like this one.[9]

Under the first approach, states adapt the *AGC* principles to accommodate indirect purchaser suits. They recognize that the strict application of each factor under *AGC* would effectively enforce *Illinois Brick* and bar indirect purchaser suits entirely. *Lithium Ion Batteries*, 2014 WL 4955377, at *9. ("[E]ven where some states' courts have specifically invoked *AGC*, they have perceived in their respective legislatures' passage of *Illinois Brick* repealer statutes an intent to extend antitrust standing to indirect purchasers and, accordingly, modified [] their application of *AGC* principles [].") Such modification may consist of, for example, "a loosening of requirements of directness, a greater tolerance for the existence of other parties who may bring suit, or lessened concern over duplicative recoveries []." *Id.*

Under the second approach, states reject *AGC*, recognizing an internal inconsistency in allowing indirect purchasers to sue while proscribing their claims because their injuries are too indirect. *Lorix*, 736 N.W. 2d at 622-23, 627-29 (Minn. 2007) (finding antitrust standing for

---

[9] IDEXX emphasizes the decisions of the state Supreme Courts in Iowa and Nebraska in applying *AGC* to dismiss claims. In both cases, the plaintiffs were not indirect purchasers, but instead consumers of products wholly distinct from the antitrust violation. In *Southard v. Visa U.S.A. Inc.*, 734 N.W. 2d 192, 194 (Iowa 2007), plaintiffs alleged they overpaid for *merchandise*, after defendants' antitrust violations increased the cost of *credit or debit services for merchants*. *Id.* at 194. Not only were plaintiffs outside the "chain of distribution," alleging they paid inflated prices for *any goods* sold by merchants injured by Visa's and Mastercard's inflated cost for financial services, *id.* at 199, but other plaintiffs had also brought claims seeking damages and had settled for over $3 billion. *Id. See also Kanne v. Visa U.S.A. Inc.*, 723 N.W. 2d 293 (Neb. 2006) (finding no antitrust standing for the same conduct at issue in *Southard* for similar reasons).

consumers who paid inflated prices for tires, as a result of a conspiracy involving rubber-processing chemicals, and holding that it did not matter whether the chemicals were a component of the tires or consumed entirely in the manufacturing process.)[10]

E. **Under The First Approach—Adapting *AGC*—Plaintiffs Have Antitrust Standing**

Jurisprudence addressing standing under California's Cartwright Act is an example of the *AGC* factors being adapted or rejected to accommodate indirect purchaser standing. The Cartwright Act confers a private right of action on "[a]ny person who is injured in his or her business or property by reason of anything forbidden or declared unlawful by this chapter, regardless of whether such injured person dealt directly or indirectly with the defendant." Calif. Bus. & Prof. Code § 16750(a). Like other repealer statutes, the scope of antitrust standing under the Cartwright Act is broader than under federal law. *Cellular Plus*, 14 Cal. App. 4th at 1234 (explaining "the more restrictive definition of 'antitrust injury' under federal law does not apply to section 16750 [the Cartwright Act]"); *see also Knevelbaard*, 232 F.3d at 987 ("California law affords [antitrust] standing more liberally than does federal law."); *Cianci v. Superior Court*, 40 Cal. 3d 903, 920 (1985) ("[T]he Cartwright Act is broader in range and deeper in reach than the Sherman Act []").

1. **The federal *AGC* test does not apply to Cartwright Act claims**

Courts have held that the ***federal AGC*** test does not apply to ***state*** antitrust claims in repealer jurisdictions "in the absence of a clear directive from those states' legislatures or highest courts." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1123 (N.D. Cal. 2009); *see also In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160, 169 (D. Maine

---

[10] *Teague*, 671 S.E.2d at 557 (rejecting application of *AGC* to North Carolina state law claims); *D.R. Ward.*, 470 F. Supp. 2d at 500-02 (refusing to apply the *AGC* test to claims under Arizona, Tennessee, and Vermont statutes); *Moniz*, 484 F. Supp. 2d at 231 (refusing to apply the *AGC* test to claims under Massachusetts antitrust law).

2004).[11]

Neither the California Supreme Court nor the California state legislature has directed courts to apply the federal *AGC* test to the Cartwright Act. In fact, the California Supreme Court has rejected the proposition that restrictions on federal antitrust claims apply to the Cartwright Act: "Interpretations of federal antitrust law are at most instructive, not conclusive, when construing the Cartwright Act, given that the Cartwright Act was modeled not on federal antitrust statutes but instead on statutes enacted by California's sister states around the turn of the 20th century." *In re Cipro Cases 1 & II*, 348 P.3d 845, 858-59 (2015) (citing *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal.4th 1185, 1195 (2013)). Indeed, in the wake of *Aryeh*, many federal courts have recognized "the interpretation [that] California's antitrust statute was coextensive with the Sherman Act [] is no longer the law in California." *Samsung Electronics Co., Ltd. V. Panasonic Corp.*, 747 F.3d 1199, 1205 n.4 (9th Cir. 2014); *In re Capacitors Antitrust Litig.*, 106 F. Supp. 3d 1051, 1073 (N.D. Cal. 2015).[12]

Further, a California appellate court held that antitrust injury is broader under the Cartwright Act than under the Sherman Act and did not rely on *AGC* to determine that plaintiffs had antitrust standing. *Cellular Plus*, 14 Cal. App. 4th at 1234. In *Cellular Plus*, individual consumers and corporate sales agents brought a price-fixing claim against providers of cellular telephone services.

---

[11] When the state high court has not issued a clear directive, a federal court should predict how the highest court would rule, considering "the decisions of lower state courts as it believes the high court would, taking into account, for instance, relevant statutory amendments, changes in doctrine over time, considered dicta from the high court suggesting it might abandon a stale precedent, or the quality and persuasive value of the lower court's opinion." *Lithium Ion Batteries*, 2014 WL 4955377, at *8. A federal court may consider an intermediate court ruling but should decline to follow it in the face of convincing evidence that the state's supreme court would likely not follow it. *New Motor Vehicles*, 350 F. Supp. at 160; *Lithium Ion Batteries*, 2014 WL 4955377, at *8 (citing *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007)).

[12] Moreover, the Cartwright Act and Sherman Act contain "differences in statutory wording and legislative history that lead, in some respects, to different results." *Knevelbaard Dairies*, 232 F.3d at 985.

*Id.* at 1229. Stating that the scope of antitrust injury under the Cartwright Act is broader than under federal law, the court in *Cellular Plus* found that both the corporate sales agents who sold cellular services to consumers, and the individual consumers who purchased those cellular services from the sales agents, suffered antitrust injury and had standing to bring antitrust claims. *Id.* at 1233, 1235. In doing so, the court did not discuss or evaluate the *AGC* factors. *See id.* at 1232-35.

IDEXX cites to *Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811 (Ct. App. 1995), for the proposition that the *AGC* factors apply to the Cartwright Act. But *Vinci* was not an indirect purchaser case. Instead, it involved a former employee's attempt to salvage a time-barred wrongful termination claim by asserting an antitrust cause of action. *Id.* at 1813. The plaintiff was a shareholder of the defendant's former competitor, who was subsequently employed and terminated by the defendant. *Id.* at 1814. Plaintiff alleged claims for wrongful termination and violation of the Cartwright Act. *Id.* The court held that the wrongful termination claim was time barred, and that the former competitor itself—not the plaintiff, merely a shareholder of that former competitor—was the proper party to assert claims under the Cartwright Act. *Id.* at 1815-16. The court mentioned but did not evaluate *AGC* in determining plaintiff lacked standing. Nor did it suggest *AGC* factors apply to the claims of indirect purchasers under California law in the same way as under federal law.[13]

Subsequent decisions follow *Cellular Plus* and confirm the narrow scope of *Vinci*. *See Lithium* at *11 (declining to apply *AGC* to Cartwright Act claims); *Capacitors*, 106 F. Supp. 3d at 1073 (same); *In re Pool Prods. Distrib. Market Antitrust Litig.*, 946 F. Supp. 2d 554, 563-64 (E.D. La. 2013) (same); *TFT-LCD*, at 1123 (same); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143,

---

[13] Moreover, California's recent Supreme Court jurisprudence casts significant doubt over *Vinci.* The court in *Vinci* mentioned the federal *AGC* factors after explaining there was "similar language" in federal antitrust law and the Cartwright Act. *Id.* at 1814. Since then, the California Supreme Court has recognized that the Cartwright Act was *not* modeled on federal antitrust statutes, and the state's antitrust laws are not replicas of federal law subject to federal court opinions. *Cipro*, 348 P.3d at 858-59 (citing *Aryeh*, 55 Cal.4th at 1195).

156-60 (E.D. Pa. 2009) (permitting suit by indirect purchasers of antidepressant drug under California law without applying the *AGC* factors). Moreover, in *TFT-LCD*, the State of California filed an amicus brief arguing that indirect purchasers in component part cases have antitrust standing under California law to pursue their claims under the Cartwright Act. *TFT-LCD*, 586 F.Supp.2d at 1120 n.5.

To the extent that federal courts have applied the *AGC* factors under the Cartwright Act, they have adapted them to accommodate indirect purchaser claims. *See, e.g., Lithium,* 2014 WL 4955377, at *9 (N.D. Cal. 2014)*. ("[E]ven where some states' courts have specifically invoked *AGC,* they have modified, or indicated they would modify, their application of *AGC* principles to accommodate indirect-purchaser suits more readily."); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1152-56 (N.D. Cal. 2009) (applying more accommodating *AGC* test to Cartwright Act claims to find that indirect purchasers of products with flash memory drives had antitrust standing, despite plaintiffs not participating in the market where antitrust violation occurred); *In re Cathode Ray Tube [CRT] Antitrust Litig.*, 738 F. Supp. 2d 1011, 1023-24 (N.D. Cal. 2010) (applying more accommodating *AGC* test to Cartwright Act claims to find that indirect purchasers of products with CRTs had antitrust standing).

### 2. California Does Not Impose a Market Participant Requirement

Courts have held that the Cartwright Act does not require that plaintiffs participate in the same market where the antitrust violation occurred. Instead, buyers who make a purchase in a market "inextricably linked" with the violation have antitrust standing. *CRT,* 738 F. Supp. 2d at 1023-24 (finding standing under Cartwright Act and several repealer jurisdiction statutes where complaint alleged that market for cathode ray tube components and finished products were "inextricably linked" and their prices "directly correlated"); *Flash Memory*, 643 F. Supp. 2d at 1153-56 (finding standing under Cartwright Act and several repealer jurisdiction statutes where markets

"inextricably intertwined" with "inherent cross-elasticity of demand"); *Lithium Ion Batteries*, 2014 WL 4955377, at *11-14 (finding standing under Cartwright Act and several repealer jurisdictions where markets for battery cells, batteries, and battery products were inextricably linked); *TFT-LCD*, 586 F. Supp. 2d at 1123-24 (finding sufficient allegations that component part market for flat panels was "inextricably linked" to finished-product market); *In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1098 (N.D. Cal. 2007) ("*GPU*") (same for graphics processing units).

Here, at minimum, IDEXX's anticompetitive conduct caused veterinarians to pay artificially inflated prices for POC Diagnostic Products, which were passed on to Plaintiffs who paid overcharges for associated veterinary products, veterinary services, or both.[14] Plaintiffs' overcharge injuries are inextricably linked to IDEXX's antitrust violation, and Plaintiffs have standing. *Aftermarket Filters*, 2009 WL 3754041, at *8.

### 3. Many States Adapt *AGC* to Permit Broad Indirect Purchaser Standing

Several states have modified the *AGC* factors to accommodate indirect purchaser plaintiffs. *See, e.g.*, *Bunker's Glass Co. v. Pilkington*, 75 P.3d 99, 110 (Ariz. 2003) (Arizona Supreme Court finding standing for indirect purchasers of flat glass, distinguishing federal antitrust standing analysis, and rejecting the dissent's position that under *AGC*, plaintiffs did not suffer an injury contemplated by antitrust law); *In re Automotive Parts Antitrust Litigation*, 29 F. Supp. 3d 982, 1001-03 (E.D. Mich. 2014) (modifying *AGC* test to find antitrust standing for indirect purchasers of component automotive parts in twenty-five states, and stating that the court was "cognizant that states that repealed *Illinois Brick* did so in order to allow indirect purchasers to bring claims."); *Flash Memory*, 643 F. Supp. 2d at 1152-54 (modifying *AGC* test to find that indirect purchasers of products with flash memory drives had antitrust standing under state law, despite not participating in

---

[14] *See* ECF No. 1 at ¶¶ 18, 148-49.

the market where antitrust violation occurred); *Knevelbaard*, 232 F.3d 979 at 987-992 (modifying *AGC* test to find antitrust standing for milk producers who directly and indirectly sold milk to defendant cheese makers); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F.Supp.3d 187, 255-66 (S.D.N.Y. 2019) (finding that even though Iowa and Nebraska Supreme Courts applied *AGC* to dismiss "non-purchaser" claims, it is not clear that the highest courts in those states "would apply the *AGC* factors strictly according to federal precedent" to dismiss indirect purchaser lawsuits).

### F. Under the Second Approach—Rejecting *AGC*—Plaintiffs Have Antitrust Standing

Minnesota provides an example of a court rejecting the *AGC* factors. In *Lorix v. Crompton Corp.*, 736 N.W.2d 619, 622 (Minn. 2007), the Minnesota Supreme Court held that consumers who paid inflated prices for tires because of a price-fixing conspiracy involving rubber-processing chemicals had antitrust standing. The court rejected application of the *AGC* factors, stating that "Minnesota is not required [] to abide by federal antitrust standing limitations" and "the *AGC* factors are not harmonious with our antitrust law." *Id.* at 626, 628.

The Minnesota Supreme Court also rejected the market participant requirement, finding that plaintiffs had antitrust standing whether or not they alleged that chemicals subject to the antitrust violation were a component of tires plaintiffs purchased or were consumed entirely in the manufacturing process. *Id.* at 622-23, 630. "*AGC* did not make a plaintiff's status as a consumer or competitor in the restrained market a sine qua non of antitrust standing. Rather, *AGC* used that status as a tool to compare the plaintiff's alleged injury to the goals of antitrust law." *Id.* at 628.

Under the laws of Minnesota and other states that expressly reject the application of *AGC*, an indirect purchaser has antitrust standing based on the purchase of a good or service that contains a component subject to an antitrust violation. *Id.* at 629. Put differently, indirect purchasers have antitrust standing if they "purchase, directly or indirectly, any product or service" that includes a

component subject to an alleged antitrust violation. *Id*. at 632. Plaintiffs agree with IDEXX that *Lorix* produces the same result as other state laws applying standing doctrine to antitrust claims, but respectfully submit that IDEXX gets that result backward.[15]

Many states follow Minnesota in rejecting application of *AGC* to state antitrust claims. *See, e.g., Teague*, 671 S.E.2d at 556-57 (holding that under North Carolina law, consumers who purchased materials with a component subject to antitrust violation had antitrust standing and that "the AGC factors do not apply in determining which indirect purchasers have standing to sue under the North Carolina antitrust statutes."); *Moniz*, 484 F. Supp. 2d at 231 (refusing to apply the *AGC* test to claims under Massachusetts antitrust law); *Keurig*, 383 F. Supp. 3d at 255-66 (declining to apply *AGC* factors to indirect purchaser claims in approximately a dozen states and finding antitrust standing in those states despite dismissing plaintiffs' federal antitrust claims for lack of standing); *In re Pool Prods. Distrib. Market Antitrust Litig.*, 946 F. Supp. 2d 554 (E.D. La. 2013) (declining to apply *AGC* factors to claims under Arizona, California, Florida, and Missouri law); *Capacitors*, 106 F. Supp. 3d at 1072 (declining to apply *AGC* to California claims); *D.R. Ward. Const. Co. v. Rohm and Haas Co.*, 470 F. Supp. 2d 485, 494, 500-02 (E.D. Pa. 2006) (refusing to apply the *AGC* test to claims under Arizona, Tennessee, and Vermont statutes); *Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours and Co.*, 2015 WL 4755335, at *19 (N.D. Cal. Aug. 11, 2015) (declining to apply *AGC* factors to Arizona, California, District of Columbia, Kansas, Michigan, Minnesota, Mississippi, New Hampshire, North Carolina, Oregon, Tennessee, and Wisconsin claims).

---

[15] *Dairy Farmers*, 2015 WL 3988488, at *12 is of no help to Defendants as there the court differentiated between a "short and narrow" "path from the price-fixed thing (*i.e.*, tire chemicals) to the end product (*i.e.*, consumer tires)" in which the chemicals were a component of the at-issue product (tires) and what the court described as a "leap" between the commodities exchange (where the alleged violations occurred) and the market for any product containing milk and cheese. Here, of course, the path between the POC Diagnostic Product overcharges to veterinarians to Plaintiffs is as short and narrow as possible and those overcharges are directly passed on to Plaintiffs. When a plaintiff purchases directly from the direct purchasers, they have standing to bring their claims under the laws of Minnesota and every other relevant state; nothing in *Dairy Farmers* changes that.

### G. Regardless of the Approach, Plaintiffs Have Standing Under the State Laws of the Repealer Jurisdictions

The parties all agree that the state laws from each of the repealer jurisdictions are, for present purposes, uniform. And, as explained above, whether a particular state modifies the *AGC* factors to accommodate indirect purchaser claims, or rejects those factors entirely, the result is the same: Plaintiffs here have antitrust standing because they make non-conclusory allegations that they paid overcharges to veterinarians because of IDEXX's alleged misconduct.

### H. IDEXX's Reliance on Harmonization Statutes is Misplaced

IDEXX urges this Court to apply the *AGC* test in states where there is statutory or judicial authority calling for courts to be "guided by" federal law when interpreting state antitrust laws. *See, e.g.,* Md. Code. Ann., Com. Law § 11-202(a)(2) (it is the legislature's intent that courts "be guided by the interpretation given by the federal courts to the various federal statutes dealing with the same or similar matters"). But a harmonization provision, whether statutory or derived from common law, is not an appropriate means of predicting how a state's highest court would rule on the applicability of *AGC* to state antitrust claims. *Flash Memory*, 634 F. Supp. 2d at 1153; *see also Lithium*, 2014 WL 4955377, at *10 ("[S]imply because a state statute encourages reference to federal law does not impose a mandate on state courts to conform in fact to federal law.").

IDEXX relies on *In re Dairy Farmers of America, Inc. Cheese Antitrust Litig.*, 2015 WL 3988488, at *4 (N.D. Ill., June 29, 2015), to argue that state harmonization statutes compel courts to rigidly apply the federal *AGC* test to state law claims, even in the absence of controlling authority. But the court in *Dairy Farmers* acknowledged that many state and federal courts "have interpreted harmonization provisions narrowly, excluding the incorporation of federal law regarding antitrust standing." *Id.* at *3. Indeed, many courts recognize that harmonization provisions generally apply to interpretations of the scope of prohibited conduct under the antitrust laws, rather than to questions of antitrust standing: "[t]he desire for harmony between federal and state antitrust law relates more to

prohibited conduct than to who can bring a lawsuit." *Lorix*, 736 N.W.2d at 626.

Moreover, IDEXX treats state harmonization statutes monolithically, despite the fact that the statutes it cites "differ substantially from each other in their wording and effect." *Lithium*, 2014 WL 4955377, at *9; *see also GPU*, 540 F. Supp. 2d at 1097 ("Not all [harmonization] statutes are equivalent in language or application[.]"). Many of the so-called harmonization statutes cited by IDEXX merely express a legislative intent for state courts to treat federal law as guidance in interpreting state law, and not as controlling authority. *See, e.g.,* Ariz. Rev. Stat. Ann. § 44-1412; D.C. Code § 38-4515; 740 Ill. Comp. Stat. 10/11; Md. Code Ann., Com. Law § 11-202(a)(2); N.H. Rev. Stat. Ann. § 356:14; Or. Rev. Stat. §646.715(2); *see also Bunker's Glass*, 75 P.3d at 106, 109-110 (using Arizona's own test for antitrust standing despite statutory harmonization clause instructing courts to use federal law as guidance).

State harmonization laws (whether statutory or created by common law) do not support IDEXX's rigid application of the *AGC* factors to state law claims where states have modified or rejected *AGC* to facilitate indirect purchaser antitrust claims.

## I. Plaintiffs' State-Law Claims Are Not Otherwise Barred

IDEXX's other arguments (ECF No. 106 at 22-24) also fail.

### 1. State-Law Class Action Prohibitions Are Preempted in Federal Court

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.* holds that, in federal court, Rule 23 permits Plaintiffs to proceed on behalf of a class and preempts state-law provisions to the contrary under the Rules Enabling Act. *See* 559 U.S. 393, 408 (2010); *id.* at 435-36 (Stevens, J., concurring). Plaintiffs can thus bring class claims under Illinois's antitrust law and Montana's and South Carolina's consumer protection acts, notwithstanding those laws' provisions limiting class proceedings in state court.

Relying on Justice Stevens's *Shady Grove* concurrence, IDEXX claims that the Illinois,

Montana, and South Carolina class action prohibitions are not preempted by the Rules Enabling Act because those prohibitions are not generally applicable in their respective states, but instead apply only to the antitrust and consumer protection statutes of which they are a part. ECF No. 106 at 22-23.[16] In effect, IDEXX contends that *Shady Grove* would have come out differently if the New York class action prohibition at issue there barred antitrust or consumer protection class claims only, instead of all claims seeking statutory penalties. *Cf. Shady Grove*, 559 U.S. at 397. But IDEXX misses the forest for the trees. In *Shady Grove*, "all five justices agreed"—Justice Stevens among them—that, under the Rules Enabling Act, Rule 23 allows plaintiffs to press state-law claims as a class in federal court notwithstanding state-law class action prohibitions. *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1335 (11th Cir. 2015). As Justice Stevens explained, because class certification simply "transform[s] 10,000 $500 cases into one $5,000,000 case," it does not define whether one can bring a claim at all (like a statute of limitations) nor expressly define the recovery amount (like a damages cap)—*i.e.*, it does not define the scope of the claim. *Shady Grove*, 559 U.S. at 1450, 1459 & n.18 (Stevens, J., concurring) (explaining class certification is neither "a damages 'proscription' [n]or [a] 'limitation'" (citations omitted)). So, for purposes of applying the Rules Enabling Act, "[t]here is no relevant, meaningful distinction between a statutorily created penalty of the kind at issue in *Shady Grove*. . . and a statutorily created claim for deceptive practices [or anticompetitive conduct]." *Lisk*, 792 F.3d at 1335. District courts applying Justice Stevens' concurrence agree. *See, e.g.*, *Mayor & City Council of Baltimore v. Merck Sharp & Dohme Corp.*, 2023 WL 8018980, at *13-14 (E.D. Pa. Nov. 20, 2023) (Illinois); *In re Broiler Chicken Antitrust*

---

[16] Rule 23 governs in federal court so long as it does "not abridge, enlarge, or modify any substantive right." *Shady Grove*, 559 U.S. at 418 (Stevens, J., concurring) (citation omitted). Under Justice Stevens's concurrence, a state-law procedural rule abridges, enlarges, or modifies a substantive right when it is "so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Id.* at 423. A state-law procedural rule is "so intertwined" with a state-created right only when it "defines the dimensions of [a] claim itself"—it is not enough that the rule was "adopted for *some* policy reason." *Id.* at 433-34.

*Litig.*, 290 F. Supp. 3d 772, 817, 820-21 (N.D. Ill. 2017) (Illinois, Montana, and South Carolina); *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, 2021 WL 4306018, at *23 (N.D. Cal. Sept. 22, 2021) (Montana and South Carolina).[17] The Court should reject Defendants' attempt to circumvent the Rules Enabling Act.[18]

### 2. Nevada's Consumer Protection Law Provides A Cause of Action For Any Victim

Nevada provides a cause of action for any victim of consumer fraud. Nev. Rev. Stat. § 41.600(1). Consumer fraud encompasses any deceptive trade practice under the Nevada Deceptive Trade Practices Act ("NDTPA"), *id.* § 41.600(2)(e), which includes when a person "[v]iolates a state or federal statute or regulation relating to the sale . . . of goods or services" like the Sherman Act. *Id.* § 598.0923(3). IDEXX concedes that Plaintiffs have adequately pled that they are victims of a deceptive trade practice under the NDTPA and that § 41.600 grants them a cause of action to remedy that violation. ECF No. 106 at 23.

Nonetheless, IDEXX moves to dismiss because, it argues, the Complaint alleges a violation of the NDTPA—not a violation of § 41.600—and the NDPTA provides a cause of action only for the elderly and people with disabilities. Numerous courts have rejected this gambit and refused to

---

[17] IDEXX relies on two district court decisions that are inconsistent with *Shady Grove*—*In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 833-34 (E.D. Pa. 2019) and *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 414-16 (S.D.N.Y. 2011). Those cases hold that Illinois's class action ban applies in federal court because it is a "policy judgment" that "is substantive." *Digital Music*, 812 F. Supp. 2d at 416; *see also Generic Pharms.*, 368 F. Supp. 3d at 833. But as Justice Stevens explained, "[a]lthough almost every rule is adopted for some reason and has some effect on the outcome of litigation, not every state rule defines the dimensions of [a] claim itself." *Shady Grove*, 559 U.S. at 433-34 (Stevens, J., concurring) (citation omitted); *see also id.* at 418 ("The Enabling Act's limitation does not mean that federal rules cannot displace state policy judgments; it means only that federal rules cannot displace a State's definition of its own rights or remedies."). Because, as *Shady Grove* holds, class certification does not define the dimensions of a claim, the state-law provisions at issue here are preempted by the Rules Enabling Act.

[18] IDEXX's motion to dismiss Plaintiffs' Illinois claim also should be denied for the separate reason that Illinois's class action limitation applies only "in any court of this State" and by its terms does not limit class claims in federal court. *See* 740 Ill. Comp. Stat. 10/7(2); *see also Merck*, 2023 WL 8018980, at *14.

dismiss antitrust-based claims brought under the NDTPA by persons who are neither elderly nor disabled. *See In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 226-27 (S.D.N.Y. 2012); *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1080-81 (S.D. Cal. 2017). Plaintiffs labeled their claim under the NDTPA because it defines the deceptive trade practice that harmed them. Their cause of action arises from that harm and is authorized under § 41.600. Defendants are on notice of the claim against them and the basis for it. That is enough to state a claim.[19]

### 3. Plaintiffs Have Adequately Pled Their Other Consumer Protection Claims

Plaintiffs are consumers for purposes of their consumer protection claims and none of their claims requires deceptive conduct, contrary to IDEXX's arguments.

First, Plaintiffs are consumers under the District of Columbia Consumer Protection Procedures Act ("DCCPPA") and the Utah Consumer Sales Practice Act ("UCSPA"). The Court previously found that Plaintiffs "purchase[d] professional services from veterinarians who used" analyzers, consumables, and single-use rapid test kits for household use. ECF No. 103, at 11; *see also* ECF No. 1 ¶ 398. That is, they received "goods or services that are primarily for personal, household, or family use" *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1043 (D.C. Cir. 2010) (interpreting DCCPA), and have alleged an unconscionable act "in connection with" a "sale . . . of goods, services, or other property. . . to, a person for primarily personal, family, or household purposes." Utah Code Ann. §§ 13-11-3(2)(a); 13-11-5(1); *see also Vivint, Inc. v. England*, 2013 WL 1842538, at *2 (D. Utah May 1, 2013). That is enough to meet the "consumer" requirements in the DCCPPA and the UCSPA; they provide that transactions made for business purposes cannot form

---

[19] If the Court holds otherwise, Plaintiffs should be granted leave to amend to allege a violation of Nev. Rev. Stat. § 41.600.

the basis of a claim. *See Shaw*, 605 F.3d at 1043. IDEXX provides no support for its contrary suggestion that Plaintiffs must also have made purchases within the same antitrust product market in which Defendants operate to qualify as consumers. *See* ECF No. 106 at 23-24.[20]

Second, Plaintiffs have alleged sufficient purchases to state claims under the Missouri Merchandising Practices Act ("MMPA") and the Vermont Consumer Fraud Act ("VCFA"). IDEXX argues that Plaintiffs cannot state a claim under the MMPA because they are not "person[s] who purchase[] or lease[] merchandise." ECF No. 23-24 (quoting Mo. Rev. Stat. § 407.024.1(1)). But the MMPA defines "merchandise" to include "any . . . services." *See* Mo. Rev. Stat. § 407.010(4). At minimum, Plaintiffs' purchases of services form the basis of their claim—a proposition IDEXX does not dispute. And IDEXX points to no authority that the MMPA requires privity between plaintiffs and defendants or prevents purchasers of services that include defendant's product as a component from suing. To that same end, the VCFA permits "[a]ny consumer who. . . sustains damages or injury" under the Act to sue and recover from any "seller, solicitor, or other violator." 9 V.S.A. § 2461(b). Faced with this broad language, IDEXX contorts a line from *Elkins v. Microsoft Corp.*, 174 Vt. 328, 333 (2002)—that plaintiffs must be a "purchaser of *the* alleged good or service"—to imply that Plaintiffs' claim fails because they did not purchase POC Diagnostic Products. ECF No. 106 at 24 (emphasis added). But that quotation described a plaintiff who purchased insurance—neither a good *nor* a service. *See Elkins*, 174 Vt. at 332-33. More relevant here, *Elkins* permitted a claim by an indirect purchaser who paid for the Windows 98 Operating System as a component of a computer on which it was pre-installed. *Id.* at 329, 340-41. The Court should permit Plaintiffs' similar claim here.

---

[20] To the extent IDEXX argues that the UCSPA does not permit indirect purchaser actions because it prohibits only unconscionable acts "in connection with" a consumer transaction, ECF No. 106 at 24, IDEXX cites no cases for that proposition and ignores numerous cases permitting indirect purchaser actions under the UCSPA. *See e.g., Sergeants Benevolent Association Health & Welfare Fund v. Actavis, plc*, 2018 WL 7197233, at *50-51 (S.D.N.Y. Dec. 26, 2018); *In re Packaged Seafood*, 242 F. Supp. 3d at 1087.

Third, Plaintiffs do not need to plead deception or misleading conduct to state a claim under Rhode Island's consumer protection statute or the UCSPA. Rhode Island's consumer protection statute prohibits all "[u]nfair methods of competition," including any practice that is "unfair *or* deceptive to the consumer," such as antitrust violations. R.I. Gen. Laws §§ 6-13.1-2, 6-13.1-1(6) (emphasis added); *see also In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 783-84 (D. Minn. 2020); *In re Packaged Seafood*, 242 F. Supp. 3d at 1084-85. As Plaintiffs have explained, IDEXX cannot rely on *George v. George F. Berkander, Inc.*, 92 R.I. 426, 169 A.2d 370 (1961), for the proposition that Rhode Island law requires unfair conduct that "reasonably tended to confuse and mislead the general public." *See* ECF No. 87 at 22 & n.21. *George* "was decided approximately eight years before the enactment of [Rhode Island's consumer protection statute] and addressed a common law unfair competition claim"; it has no application to Plaintiffs' claim under Rhode Island's consumer protection statute. *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 586 (M.D. Pa. 2009). Similarly, while IDEXX asserts that the UCSPA proscribes only "deceptive act[s] or practice[s]," ECF No. 106 at 24 (citation omitted), the statute also prohibits "unconscionable act[s] and practice[s]." Utah Code Ann. § 13-11-5. Because the statute is to be "construed liberally" and its purpose is "to make state regulation of consumer sales practices not inconsistent with the policies" of the FTC Act, Utah Code § 13-11-2, courts have held that a well-pled antitrust violation constitutes an unconscionable act without requiring a showing of deception. *See Sergeants Benevolent Association*, 2018 WL 7197233, at *50-51; *In re Packaged Seafood*, 242 F. Supp. 3d at 1086-87.[21]

---

[21] In its reply brief in support of its initial motion to dismiss, IDEXX argued that the UCSPA's unconscionability prong relates only to substantively and procedurally unconscionable contracts. That is wrong. IDEXX's own case explains that the UCSPA's unconscionability prong covers broader conduct than just unconscionable contracts. *See Wade v. Jobe*, 818 P.2d 1006, 1017 (Utah 1991), *overruled on other grounds by Carlie v. Morgan*, 922 P.2d 1 (Utah 1996) ("Under contract law, unconscionability is determined as of the time the parties enter into the contract. In contrast, under the UCSPA, an unconscionable act or practice may occur 'before, during or after' a consumer transaction." (citation omitted)).

The result should be no different here.

## IV. CONCLUSION

For the foregoing reasons IDEXX's Rule 12(b)(6) motion as to Plaintiffs' state law claims should be denied.

Dated: March 13, 2024         Respectfully submitted,

*/s Elizabeth F. Quinby*
Gregory P. Hansel
Michael S. Smith
Elizabeth F. Quinby
**PRETI FLAHERTY BELIVEAU & PACHIOS, CHARTERED, LLP**
One City Center
P.O. Box 9546
Portland, ME 04112-9546
(207) 791-3000
ghansel@preti.com
msmith@preti.com
equinby@preti.com
*Local Counsel for Plaintiffs and
the Proposed Class*

Joshua P. Davis (*admitted pro hac vice*)
**BERGER MONTAGUE PC**
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone: (800) 424-6690
jdavis@bm.net

Eric L. Cramer (*admitted pro hac vice*)
Michael J. Kane (*admitted pro hac vice*)
Andrew C. Curley (*admitted pro hac vice*)
Najah A. Jacobs (*admitted pro hac vice*)
**BERGER MONTAGUE PC**
1818 Market Street
Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
ecramer@bm.net
mkane@bm.net
acurley@bm.net
njacobs@bm.net

Daniel Walker (*admitted pro hac vice*)
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20006
Telephone: (202) 559-9745
dwalker@bm.net

Brent W. Johnson (*admitted pro hac vice*)
Richard A. Koffman (*admitted pro hac vice*)
Daniel McCuaig (*admitted pro hac vice*)
Daniel H. Silverman (*admitted pro hac vice*)
Zachary Krowitz (*admitted pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
(202) 408-4600
bjohnson@cohenmilstein.com
rkoffman@cohenmilstein.com
dmccuaig@cohenmilstein.com
dsilverman@cohenmilstein.com
zkrowitz@cohenmilstein.com

*Counsel for Plaintiffs Cam Yuen, Arrianna Garcia, Kathryn Heberling, Susan McVinney, Sunny Stimson, Ellen Berman, Neil Murphy, Dennis Wild, Andrea Bury, Miranda Smelcer, Marcia Potts, Sheryl Emerson, Chrysta Cataldo, Marlena Giga, Gina Giorgio, Michelle Carpenter, Valerie Hitz, Shavonna Armstrong, Hilary Allred, Melissa Marshall, Joseph Duncan, and Dawn Reynosa, and Proposed Co-Lead Counsel for the Class*

Jennie Lee Anderson (*admitted pro hac vice*)
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 986-1400
Facsimile: (415) 986-1474
jennie@andrusanderson.com
*Additional Counsel for Plaintiffs and for the Proposed Class*